**William Ernest UNGLESBY, Plaintiff,**

v.

**S. M. ZIMNY, individually and as Commanding Officer of the U. S. Naval Receiving Station, et al., Defendants.**

No. 43378.

United States District Court
N. D. California, S. D.

Nov. 16, 1965.

James T. McDonald, Dunn, Hart & McDonald, San Francisco, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendants.

ZIRPOLI, District Judge.

Plaintiff, an enlisted man in the United States Navy, has instituted this action in an effort to prevent his separation from naval service. He seeks a temporary injunction preventing his discharge and a declaratory judgment under 28 U.

S.C., Sections 2201, 2202, and 5 U.S.C., Section 1009 of the Administrative Procedure Act. A temporary restraining order preventing plaintiff's discharge pending the decision in this case was ordered.

Plaintiff alleges that the regulations applied by the administrative discharge board violate the fifth and sixth amendments of the United States Constitution. He further alleges that the defendants have violated applicable regulations and acted in excess of the statutory authority granted by congress.

The defendants have moved to dismiss the complaint, alleging that the plaintiff has failed to exhaust appropriate administrative remedies. Defendants point out that the plaintiff is free to present his case, following his discharge, before a review board (10 U.S.C., Section 1553), and the Board for the Correction of Naval Records (10 U.S.C., Section 1552). Defendants further allege that the proceedings accorded the plaintiff are consistent with due process of law and that there is no basis for the court to set them aside or otherwise prevent the Department of the Navy from enforcing its order.

The record before the court shows that in November of 1964 the plaintiff was advised by his commanding officer that he had been accused of participating in homosexual acts. The plaintiff's case was processed according to applicable naval regulations. Bureau of Personnel Manual, Article C–10311; Secretary of the Navy Instruction, 1900.9. The plaintiff was then transferred to the United States Naval Receiving Station, San Francisco, California, to await action by the Chief of the Bureau of Naval Personnel. Plaintiff refused to sign a request for discharge and asserted that it was in his best interest to be tried by Court-Martial. The commandant of the 12th Naval District denied the plaintiff's request and ordered that his case be processed administratively. Under protest the plaintiff elected to have his case heard before an administrative tribunal.

32 C.F.R. 730.14, 730.15. Plaintiff requested that three witnesses be present at the hearing. His request was denied, and he was informed that there was no provision for compulsory process to insure the attendance of civilian witnesses, but that he might request their voluntary appearance.

The plaintiff appeared before the administrative tribunal. Statements of the three witnesses requested by the plaintiff, as well as his own, were introduced by the prosecution. Counsel objected to the introduction of these statements and also requested the board to refrain from considering these documents. The board found that the plaintiff had participated in homosexual acts and recommended his discharge. If his confession were excluded, it is clear that the board could not have reached this conclusion without relying on the documents which had been received over the plaintiff's objection.

The Chief of the Bureau of Naval Personnel has ordered that the plaintiff be separated from naval service with a General Discharge under Honorable Conditions by reason of unfitness. Despite the similarity of title, this is less than an honorable discharge.

■ The courts of this nation have indulged a traditional reluctance to consider questions presented by the actions of administrative agencies prior to the exhaustion of the authorized administrative procedures provided for their settlement. Judicial decisions dealing with the problems presented by the exhaustion doctrine do not provide any clear-cut guide for the resolution of these questions. 3 Davis, Administrative Law Treatise 56, (1958). It is, however, quite clear that in certain circumstances the judicial policy which requires the exhaustion of administrative remedies before resort to the courts should not be applied in a rigid or inflexible manner. See Bancroft v. Indemnity Ins. Co. of North America, D.C., 203 F.Supp. 49. This Court is convinced that there are certain circumstances which would justify review in this type of case prior to review by the Discharge Review Board or the Board for the Correction of Naval Records. Neither of these agencies for administrative review will consider the plaintiff's case until after his discharge is completed. The regulations of the Naval Discharge Review Board preclude review until after discharge. The Board for the Correction of Naval Records has specifically refused to take jurisdiction before the plaintiff has been discharged.

■ The test to be applied by a court faced with a request for a stay of administrative action pending judicial review is well stated in Covington v. Schwartz, D.C., 230 F.Supp. 249, aff'd 341 F.2d 537 (9th Cir. 1965). That case sets forth a four point test for granting a stay of administrative action in military discharge cases. The moving party must establish: (1) a likelihood of probable success on the merits of the appeal in the District Court; (2) irreparable injury to the petitioner unless the stay is granted; (3) an absence of substantial harm to other interested persons; (4) no harm to the public interest.

■ The District Court in the *Covington* case, supra, ordered a stay of discharge, pending exhaustion of military remedies and judicial review by a United States District Court. On appeal that order was modified to remain in force "until the Army Board for Correction of Military Records has acted and until disposition of the District Court action." Schwartz v. Covington, 341 F.2d 537, 539. The factual setting of the *Covington* case presented a situation which is very similar to the problem presently before this Court. There appellee sought to stay his discharge pending review of the hearing board's recommendation by the Army Board for the Correction of Military Records. The Court of Appeals stated that the injury and stigma attached to an undesirable discharge constitutes irreparable damage, despite the fact that the appellee would be reinstated if he prevailed on the merits of his appeal. In our modern society where the vast majority of the nation's young men must

pass through the military services, discharge with anything less than a record of honorable service constitutes a stigma of tremendous impact which will have a lifelong effect. This Court does not see any substantial distinction between an undesirable discharge and a General Discharge by reason of unfitness that would affect the resolution of the questions presented by this case.

The Court of Appeals also noted that the continued presence of an accused in the military service pending final determination of his case posed no risk either to the public interest or to other interested persons.

The facts in this case indicate a situation which is substantially similar to the *Covington* case. The decision of the Court of Appeals compels the conclusion that this plaintiff would indeed suffer irreparable damage if discharged. Nor can it be said that his continued presence in the Navy pending review would pose a risk of substantial harm either to the public or other interested persons.

The resolution of this case must turn on whether or not the plaintiff has demonstrated that there is a likelihood that he will prevail on the merits of his appeal to the court. In the *Covington* case the Court of Appeals stated that there was a substantial likelihood that the Army board acted in excess of its authority by considering evidence pertaining to acts prior to the plaintiff's current enlistment. If that evidence had not been considered, the Court concluded that the evidence was not very substantial. This indicates that a stay will be granted if the Court concludes that the plaintiff would ultimately prevail, assuming the proper procedure, when reviewed under the narrow standard of review dictated by the substantial evidence test. It is not clear that a stay may not be granted where a constitutional challenge to the discharge procedure is so substantial that it is impossible for a Court to make an independent conclusion on the factual issue presented by the case. That question

need not be considered in the context of this case.

The Court has reviewed the record that was presented to the administrative board in the instant case, and assuming there were no constitutional infirmities, it is satisfied that there was substantial admissible evidence before the administrative board to sustain its recommendation. The Court is convinced that the plaintiff has not sustained the burden of demonstrating a substantial likelihood of success on appeal.

The doctrine of exhaustion is to a large measure based upon judicial deference to administrative expertise. 3 Davis, Administrative Law Treatise 69 (1958). The construction of military regulations, which have been adopted by the department of defense pursuant to broad grants of legislative authority, properly present a situation where exhaustion should be required prior to judicial review, if the moving party cannot sustain the burden of a likelihood of success on appeal.

A substantial constitutional challenge to administrative procedure presents a different question. See Reed v. Franke, 297 F.2d 17, 21 (4th Cir. 1961). The administrative machinery established by the department of defense has neither the authority nor the experience to resolve constitutional questions. That power has been exclusively delegated to the judiciary.

The plaintiff in this case alleges that the hearing accorded him by the administrative board denied him the opportunity to confront and cross-examine the witnesses against him, in violation of the fifth and sixth amendments to the United States Constitution. This Court has concluded that under the administrative procedure applied in the instant case, this allegation does not present a substantial constitutional challenge which is sufficient to justify staying the plaintiff's discharge.

There has been no United States Supreme Court decision holding that con-

frontation and cross-examination are constitutionally required in administrative hearings. The case of Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), does, however, indicate that the United States Supreme Court concluded that the administrative procedure in that particular case raised serious constitutional problems. A careful review of the *Greene* case, supra, indicates substantial differences between the procedure employed by the Eastern Industrial Personnel Security Board and that which is required in an administrative discharge hearing.

■■ Although it is clear that Congress may set standards of military due process in view of military necessity, such standards as are adopted must conform to minimal requirements of constitutional due process. It is against this standard of flexible due process that the procedures for the conduct of administrative discharge board hearings must be measured. This concept of due process was aptly stated by Mr. Justice Frankfurter in a concurring opinion in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 162–163, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951): "But 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history and civilization, 'due process' cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, 'due process' is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess."

The basic procedure which must be followed in an administrative discharge hearing is set out in 32 C.F.R. 730.15. The board is composed of not less than three commissioned officers. Board members may be challenged for cause. The accused may be represented by counsel. A verbatim transcript of the proceedings is not required, but such a transcript was made in this case. The accused has the right to present witnesses, evidence, and depositions, to examine witnesses, and to hear and refute all of the evidence against him. The regulations specifically preclude the board from relying on information or evidence which is not available to the defense. The regulations do not provide for a form of compulsory process to insure the attendance of witnesses nor do they require the board to observe formal rules of evidence.

The procedure followed by the security revocation board in Greene v. McElroy, supra, is subject to many vices which are not present in the discharge board procedure. The petitioner in the *Greene* case was only presented with a generalized summary of the charges. It was also evident that the board had reached its conclusion by relying on investigatory reports and the statements of confidential informants which were not made available to the petitioner. In addition, the very nature of the accusations against the petitioner were extremely difficult to refute without access to detailed information.[1] This must be contrasted with a specific charge of homosexual activity with specified parties at particular times. The military regulations which govern the conduct of discharge board proceedings specifically preclude the board from considering any information which is not available to the accused.

The plaintiff also cites United States v. Rasmussen, 222 F.Supp. 430 (D.C. Montana 1963), in support of his challenge. In that case the United States sought an injunction to prevent the defendant from continuing in his official employment. The defendant had been accused of fraud and dismissed after a

---

1. Greene v. McElroy, 360 U.S. 474, 484 ftn. 14, 79 S.Ct. 1400.

hearing before an administrative agency. The District Court denied the injunction after concluding that the administrative hearing accorded the defendant failed to satisfy the requirements of due process. The *Rasmussen* case, supra, and the *Greene* case, supra, are very similar. In each situation the defendants were deprived of the opportunity to confront and cross-examine their accusers, but more significantly, they were not sufficiently apprised of the evidence against them. It is because of this failure to apprise the defendants of the evidence that was considered in arriving at the administrative board's determination that the *Rasmussen* and *Greene* cases must be distinguished from the case at hand.

In reality, the plaintiff's complaint in this case is only partially based on the failure of the board to allow him to confront and cross-examine the witnesses against him. Plaintiff was well aware of the evidence that would be presented at the hearing. His only complaint is that the government did not provide compulsory process to insure the physical presence of the witnesses whose statements were accepted and considered by the board. Plaintiff's brief does not even allege that he requested these witnesses to appear voluntarily or that he sought to obtain additional statements from them.

This Court is well aware that it would be a better practice for the military to require the presence of witnesses at administrative discharge hearings. Yet, it is clear that not even an administrative body which is performing an adjudicatory function is required to follow all of the procedural requisites which are observed in a judicial hearing

This Court is forced to the conclusion that the plaintiff's challenge to the constitutionality of the procedures applied in the administrative hearing of his case must fail. Since the plaintiff has not demonstrated a likelihood of success on appeal, the temporary restraining order is discharged, the stay denied, the motion to dismiss granted, and the complaint is dismissed.