Robert L. CRAWFORD

v.

Wilbur E. DAVIS, Individually and as the Senior Army Advisor, U. S. Army Adviser, Group (NG) Delaware, 10th and DuPont Streets, Wilmington, Delaware, William F. Train, Individually and as Commanding General of the Second United States Army, Fort George G. Meade, Maryland, and Stanley R. Resor, Individually and as Secretary of the United States Army, Headquarters, Department of the Army, Washington, D. C.

Civ. A. No. 39181.

United States District Court
E. D. Pennsylvania.

Jan. 12, 1966.

Certiorari Denied Feb. 21, 1966.

See 86 S.Ct. 923.

Joseph M. Gindhart, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., James C. Lightfoot, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

HIGGINBOTHAM, District Judge.

The instant matter is before this Court on a motion for a preliminary injunction. The plaintiff, Robert L. Crawford, a sergeant in the United States Army, seeks to prevent his discharge, by the Army, on grounds of homosexuality.[1] This Court has jurisdiction under 28 U.S.C.A. 2201 and 2202, and 5 U.S.C.A. 1009.

The plaintiff is a sergeant first class assigned to the United States Army Advisory Group in Wilmington, Delaware. He has served with the Army for seventeen years and eleven months—all of which time he has been on active duty. His current enlistment began on March 30, 1962, and he will be eligible for retirement on January 31, 1968.

On or about November 15, 1964, an anonymous letter was received by Headquarters, Department of the Army, Washington, D. C., which alleged that the plaintiff had homosexual inclinations and had participated in homosexual acts. An investigation was subsequently undertaken by the Army's Criminal Investigation Division in Philadelphia to determine the truth of the charges.

On January 28, 1965, the plaintiff's commanding officer, Colonel Wilbur E. Davis, was visited by agents of the C.I. D. and informed of the charges made against the plaintiff. The agents sought to have the Colonel's authorization to search the desk used by the plaintiff, and such permission was granted. As a result of this search the investigators found three letters written to the plaintiff which contained language suggestive of homosexual activity on his part. The plaintiff was not present at the time of this search.

On February 24, 1965, the plaintiff was confronted by one Victor D. McGuire, Jr., a military criminal investigator, as to the allegations of homosexuality made against him. He was told that he was under investigation and asked whether he wished to make a statement. Later during the same day the plaintiff went to the C.I.D. office in Philadelphia where, after being given a warning under Article 31 of the Uniform Military Code of Justice,[2] he made an incriminating statement. In this statement the plaintiff admitted that he had participated in homosexual activities and that he had a "problem". At the same time the plaintiff identified the author of the anonymous letter as one Melba Custis. Two days later, on February 26, 1965, the plaintiff made an additional statement, wherein he again admitted that he had

---

1. If the plaintiff is discharged he will receive a general discharge under honorable conditions. The standard discharge given by the Army is an honorable discharge. The significance of this will be discussed hereafter in greater detail.

2. Uniform Code of Military Justice, Article 31, provides that: No person subject to this code shall compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him. No person subject to this code shall interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected, and that any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial. No person subject to this code shall compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him. No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement shall be received in evidence against him in a trial by court-martial.

participated in homosexual acts. On March 9, 1965, the plaintiff was referred to the Valley Forge Army Hospital at Phoenixville, Pennsylvania for psychiatric treatment and evaluation.

As a consequence of the investigation, a Board of Officers proceeding was convened to determine whether the plaintiff should be separated from military service. The Board convened on September 23, 1965, at which time the plaintiff personally appeared with counsel. The plaintiff testified, and again admitted having committed homosexual acts. On October 4, 1965, the Board found the plaintiff to be a class II homosexual as defined in Army Regulations 635–89 and recommended that he be eliminated from the service and given a general discharge certificate under honorable conditions. The Board's recommendations were approved by the Commanding General of the Second Army on October 29, 1965 and steps were taken to discharge the plaintiff from the service.

Shortly thereafter this action was brought to enjoin the Army from effecting the plaintiff's discharge, and a hearing was granted the plaintiff.

■■ The remedy of an injunction is an extraordinary one and should not be blithely granted. Thus, certain criteria have been established to guide the courts in the disposition of matters such as the one before us. These criteria were enumerated in Associated Securities Corp. v. Securities Exchange Commission, 283 F. 2d 773 (10 Cir., 1960), Eastern Air Lines Inc., v. Civil Aeronautics Board, 261 F.2d 830 (2 Cir., 1958). They are:

(1) Irreparable injury to the petitioner unless the stay is granted;

(2) Absence of substantial harm to other interested parties;

(3) Absence of harm to the public interest; and

(4) A likelihood that the petitioner will prevail on the merits of his appeal.

■ Since all of the above criteria are conditions precedent for the issuance of a preliminary injunction, I must deny the injunction requested herein by reason of plaintiff's failure to establish elements 2, 3 and 4. For the purposes of analysis I will discuss each of the criteria under a separate heading giving my reasons for the denial of the requested injunction.

## I.

### IRREPARABLE INJURY TO THE PLAINTIFF

■ The plaintiff contends that should he be discharged at the present time, and before he has processed his appeals through military channels, he will suffer irreparable harm. This contention is vigorously denied by the Government which contends that the plaintiff has an adequate remedy at law. The Government contends, correctly, that the plaintiff is free to present his case, after discharge, to the Army Discharge Review Board and to the Army Board for Correction of Military Records. In addition a letter from the Secretary of the Army has been filed with this Court stating that should the plaintiff prevail in his appeals (through the normal military channels), he will be restored to his former rank with all its privileges, retroactive to the date of his discharge.

The Government relies on a series of cases to support its contention, two of which are particularly relevant here. The cases are Beard v. Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321 (1961) and Roberts v. Vance, 119 U.S.App.D.C. 367, 343 F.2d 236 (1964). In both of these cases judicial relief in the form of extraordinary remedies was stayed pending administrative action. There are, however, essential differences between the situation in those cases and that in the instant case.

In *Beard*, the plaintiff was a commissioned officer who could not be removed from the active duty list of the Regular Army unless the Secretary of the Army approved. The Supreme Court noted that (370 U.S. pp. 41–42, 82 S.Ct. p. 1105):

The appellant will not be removed from the active list of the Regular

Army unless the Secretary of the Army exercises the discretionary authority to remove him conferred by 10 U.S.C. § 3794. The Secretary has not stated that he will so exercise his discretion as to remove appellant. If the Secretary does not remove the appellant it will be unnecessary to pass on the constitutional objections which have been urged.

In the *Roberts* case, the plaintiff was a reserve officer who was then on active duty, and who remained on active duty at the pleasure of the Secretary of the Army under 10 U.S.C. § 681:

Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty.

The Court of Appeals set aside the Secretary's action in removing Major Roberts from the active duty list because he had not followed his own regulations, promulgated in accordance with the statutory authority listed above. It should be noted that at the time suit was filed in *Roberts*, the challenged action had already taken place and thus the courts were merely reviewing a completed administrative action. This is not the case here.

If the plaintiff in the instant case were complaining only that certain administrative procedures were not followed in this case I would be inclined to find that there was no showing of irreparable injury; however, in this case I must consider the nature of the offense for which the plaintiff is being discharged, and the form which that discharge will take.

The plaintiff will be given a general discharge under honorable conditions. The Government points out—and I agree—that this type of discharge is not the same as a dishonorable, bad conduct or undesirable discharge. Nevertheless, it should be noted that the failure of the plaintiff to receive an honorable discharge is likely to have certain adverse effects on his employment opportunities and other aspects of his life. This issue was discussed in Unglesby v. Zimny, 250 F.Supp. 714, p. 716 (Northern District of California, Southern Division, November 15, 1965), and the court there observed that:

* * * the injury and stigma attached to an undesirable discharge constitutes irreparable damage, despite the fact that the appellee would be reinstated if he prevailed on the merits of his appeal. *In our modern society where the vast majority of the nation's young men must pass through the military services, discharge with anything less than a record of honorable service constitutes a stigma of tremendous impact which will have a lifelong effect. This Court does not see any substantial distinction between an undesirable discharge and a General Discharge by reason of unfitness that would affect the resolution of the questions presented by this case.* (Emphasis added.)

Similarly, although I am aware of the assurances given by the Secretary of the Army that the plaintiff would be reinstated with full rank and privileges should he prevail on appeal after discharge, it is my view that the risk of harm to the plaintiff during the interim would be substantial. The plaintiff would be placed in the position of having to seek work at which time he would undoubtedly be asked about his military status, and perhaps forced by circumstances to divulge the reasons for his discharge. Therefore, on the question of "irreparable harm," I find that the plaintiff has met his burden of proof.

## II.

### SUBSTANTIAL HARM TO THE ARMY

It is the position of the defendants that the Army would suffer irreparable harm if the plaintiff is allowed to remain in the service pending disposition of his appeal. Specifically, the defendants advance the following contentions: (a) that a confessed homosexual would create morale problems if young recruits are exposed to him, (b) that office routine would be disrupted by his continued

presence, (c) that the plaintiff by his own admission has admitted that his homosexual tendencies are heightened by the use of "intoxicating drinks" and that there is no guarantee that he will not continue to use them, and (d) that the plaintiff would not be available for "full and complete military assignments."

The plaintiff insists that as a practical matter, the Army would not be significantly harmed by my ordering his retention at this present duty station. In substance, he asserts that he has little, if any, contact with young and inexperienced recruits, and the record establishes generally that his superior officers found his actual performance on his *present* assignment satisfactory.

■ If we were dealing with a governmental agency which had responsibilities no more crucial than clerical chores, then it could be persuasively argued that the plaintiff's retention in his present assignment, while his appeals were being processed, would not cause substantial harm to the Army. I must, however, take judicial notice of the inherently mobile nature of military life and the general requirement that a soldier on active duty must be eligible to accept any assignment required of him. I cannot say with certainty that the plaintiff will remain at his present duty station or that the personnel there will remain constant. Thus, although the present personnel of the Army Advisors Office would not be affected by the plaintiff's presence, I cannot say with any assurance that any new personnel will have the same attitude to the plaintiff's affliction.

It should be noted also, that the national interest might dictate that the plaintiff's present assignment be changed from the relative quiet of the Army Advisors Office to one where sound emotional health is a necessity. Indeed, because of the charges brought against him, an order assigning the plaintiff to duty overseas had to be cancelled. I think that it would be clearly inappropriate to hobble the Army by forcing it to retain even one soldier, for an indefinite period of time, when there are serious questions concerning his emotional health.

I am reluctant to bring about such a result by judicial edict, recognizing as I do, that matters of this type are particularly appropriate for the Army's discretion rather than for judicial intervention.

### III.

### HARM TO THE PUBLIC INTEREST

The questions of harm to the Army and harm to the public interest are closely inter-related and the standards which govern a determination of one to a great degree govern the other. This is not to say that the scope of both these questions are coterminous, for in many cases the interest of the public and the parties immediately affected may diverge. In the instant case the defendant is the Government itself and as such its interest and that of the public by necessity converge.

Having found that the retention of the plaintiff in the service, pending the disposition of his appeal, would involve a significant probability of harm to the Army, it follows that the public interest would also be harmed. I thus find against the plaintiff on this issue as well.

### IV.

### THE LIKELIHOOD OF SUCCESS ON APPEAL

In addition to meeting his burden of proof on other elements, the plaintiff must also demonstrate that he is likely to prevail on the merits on his present appeals through the military system.[3] At the preliminary injunction stage in this type of case, the function of a district court is particularly difficult since it must examine the substantive issues carefully enough to make an informed judgment on the probabilities of success on appeal and yet refrain from making a

---

3. Some of the plaintiff's appellate remedies are mentioned in the findings of fact.

definitive judgment on the merits.[4] Thus, there are cases which the plaintiff might win on an administrative appeal within the military system or cases in which he may be successful in an appeal to this Court from a final adverse administrative adjudication. Yet, despite that possibility of success, he would not now be entitled to a preliminary injunction. Such a hypothetical situation is not a remote analogy for this case. Though I conclude, infra, that the plaintiff fails to meet the high burden of the likelihood of success on appeal, my comments are not intended to suggest that he should not win on an appeal within the administrative levels of the military system, rather, I am merely making an illusive judgment on substantial probabilities.

· The plaintiff has advanced numerous arguments as to why he should prevail in his appeals to the Army Discharge Review Board and the Board for the Correction of Military Records; some of these arguments are clearly without merit, while others raise questions which are by no means free from doubt.

Basically, the plaintiff's contentions can be divided into two groups (a) violations of Army regulations by the convening authority in the establishment of, and proceedings of the Board of Officers in issue; and (b) violations of the plaintiff's constitutional rights during the investigative process and the Board of Officers proceeding. For the sake of convenience, I will first deal with the question of irregularities in the Administrative proceedings.

As to the errors in violations of Army regulations in the administrative proceedings the plaintiff urges that (1) the decision convening the Board of Officers was not one made personally by his commanding general, (2) the Board of Officers did not make specific findings of fact as required by the governing regulations, (3) written notice of the Board proceedings was not given to him until the day before the hearing, (4) the Board was not composed of "unbiased" officers as required by the regulations, (5) one of the Board members was not an "experienced" officer of mature judgment as required by the regulations, and (6) reference was made to a prior investigation carried out prior to his honorable discharge at the end of a prior enlistment.

I have viewed with care each of the above six allegations charging administrative irregularities, and while the proceedings may not have been totally errorless, I cannot find that any of these procedural errors had singularly such fundamental substance that there is a certainty of plaintiff's success on appeal.[5]

The charges of constitutional deprivation, during the investigative process and the Board of Officers' proceedings, however, raise matters of greater substance. On the constitutional issue, the plaintiff asserts that (a) the search which led to the discovery of the incriminating letters was an illegal one, (b) this illegally obtained evidence was presented to the Board of Officers, (c) the incriminating statements made by him comes as a direct consequence of the illegally seized letters and thus were the "fruits of a poisonous tree", (d) he was not warned of his rights under Article 31 of the Uniform Code of Military Justice or offered counsel during his interrogation, and (e) was not allowed to confront his accusers.

In determining the constitutional issues, the chronology of events is of significance. There are substantial inferences that the search of the locked government desk used by Sergeant Crawford, was not based on probable cause.

4. Unglesby v. Zimny, et al., 250 F.Supp. 714 (U.S. District Court, Northern District of California, Southern Division, November 15, 1965.)

5. Of course there is always the possibility that the cumulative effect of several irregularities when combined may result in fundamental error, but again I will leave this judgment to the Army Review Board.

The authorities are apparently unanimous that under the circumstances of this type " \* \* \* it can be said with assurance that the exercise of authority to search must be founded upon probable cause" United States v. Gebhardt, 10 U.S.C.M.A. 6–6 (1959), and probable cause in this case, if any, must rest on the anonymous letter.[6]

The anonymous letter rises no higher than a tip, and the military courts have held that the tip must be "reliable", and "the reliability of the informant is the controlling factor." United States v. Davenport, 14 U.S.C.M.A. 152 (1963). Cf. Costello v. United States, 9 Cir., 298 F.2d 99; Cochran v. United States, 291 F.2d 633 (8th Cir., 1961); Rodgers v. United States, 267 F.2d 79 (9th Cir., 1959).

■ In *Davenport*, supra, the Court quoted with approval the following passage from Costello v. United States, supra, 298 F.2d at page 101:

All the cases in which a 'tip' has been heavily relied upon to establish probable cause have stressed the need for 'a substantial basis for crediting the hearsay,' Jones v. United States, 362 U.S. 257, 269, 80 S.Ct 725, 735, 4 L.Ed.2d 697 (1960), or a record of 'accurate and reliable information,' Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, [3 L.Ed.2d 327] (1958); in short, 'a previously reliable informant,' Espinoza v. United States, 278 F.2d 802 (5th Cir. 1960). Prudent and cautious men would not act in so decisive a fashion in reliance on an uncorroborated anonymous caller, and there is nothing in this record to show that the present informant was anything more than that.

I therefore find that there is substantial authority establishing that the search of the plaintiff's desk was effected without probable cause and that the products of that search should not have been presented to the Board of Officers.

While the establishment of the illegality of the original search is a condition precedent for plaintiff's further argument to vitiate the Board of Officers' proceedings it nevertheless does not logically follow that mere proof of the original illegality of the search will permeate all subsequent proceedings so that they become voidable by reason of constitutional infirmities. Thus the nub of the constitutional problem here is whether the original search made all subsequent proceedings "fruits of the poisonous tree" and thereby make the proceedings voidable.

The military courts apparently recognize the "fruit of the poisonous tree" doctrine but their application of it is far from clear. In United States v. DeLeo, 5 U.S.C.M.A. 148, the Court of Military Appeals noted that:

On the premise that the search in suit was unlawful, it might rationally be concluded in the ordinary case that the confession by the accused was likewise tainted with illegality. But the instant case is distinctly out of the common rut \* \* \* Under the circumstances, we are not disposed to indulge in speculation concerning "poisonous trees" and the fruits thereof, but will accept the accused's own view that the confession was in no way a result of the search. (pp. 162–163).

More significantly, footnote 4 of the same opinion contains the following (p. 162):

\* \* \* Possibly the criterion [for the application of the fruit of the poisonous tree doctrine] is whether, in a particular case the confession may be said to have resulted from the evidence unearthed by the illegal search. Furnishing the warning required by Article 31 might then constitute at least one circumstance in-

---

**6.** Except for the anonymous letter, Colonel Davis by his own admission, had no reason to suspect that plaintiff had homosexual tendencies. (Transcript of Board of Officers' Proceeding, p. 6.)

dicating the interruption of a *chain of causation.* (Emphasis added.)

A similar statement can be found in the United States Army manual on Evidence.[7] Because that statement is not official Army policy, I do not rely on it, but it does serve to illustrate the considerations which must be weighed in this area.

In the instant case, the plaintiff gave a written statement on February 26, 1965, admitting his homosexuality which statement if given without prior constitutional infirmities, would be admissible and substantial evidence in itself to justify the verdict rendered by the Board of Officers' inquiry. And thus the pivotal issue will be whether the Article 31 warning given in that statement broke the "chain of causation" as mentioned in *DeLeo,* supra, so that the February 26th statement was not tainted "fruit" from the "poisonous tree". Nationally, the decisions are in substantial flux as to the extent of permeation of a prior taint. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Watson v. United States, 189 F.Supp. 776 (U.S.D.C. for the Southern District of California, Central Division, 1960); Wayne v. United States, 115 U.S.App. D.C. 234, 318 F.2d 205 (1963). See also dissenting opinion in *Wayne,* supra, by Judge Edgerton at 214, 215; and Georgetown Law Journal 838 (1963), 77 Harvard Law Review 62, at p. 117 (1963).

Last month, my distinguished colleague, Chief Judge Clary, reviewed an analogous problem, with care, in determining whether an alleged unconstitutional admission first made to Philadelphia City Police tainted a later confession as the fruits of the poisonous tree, when the later confession was given to Postal Inspectors who had appropriately warned the defendant of his constitutional rights. United States v. Hickey, Eastern District of Pennsylvania, 247 F. Supp. 621, Opinion of December 9, 1965. Thus Chief Judge Clary held that after the defendant "was advised of his constitutional rights by the postal authorities, the character of his earlier confession [to the city police] did not render fatally defective any subsequent statement. Therefore, his rights were not infringed in taking this confession, and such statement was not tainted by the earlier admission given to the local police. Consequently, the court did not err in admitting into evidence this second confession [to the postal authorities]." Cf. United States v. Bayer, 331 U.S. 532, at 540, 67 S.Ct. 1394, at 1398, 91 L.Ed. 1654.

 I recognize the steady trend in the expansion of the fruit of the poisonous tree doctrine as a basis for excluding subsequent evidence and nullifying proceedings. Yet, even taking the view most favorable to the plaintiff, I must conclude that at a minimum, on this constitutional issue, his probabilities of suc-

7. Military Justice Evidence; Pamphlet No. 27–172, p. 379. Confessions as 'Poisoned Fruit.' A confession or admission of the accused, like any other evidence, may be rendered inadmissible by a prior illegal search and seizure or wiretap. The 'tainting' of a confession under the fruit-of-the-poisonous-tree doctrine can occur in two different ways. First, if the confession is obtained as the result of an interrogation which was conducted solely because of the unlawfully secured information, the confession is clearly the product of the unlawfully seized evidence, i. e., if it would have been conducted even if the search and seizure or wiretap had not occurred, the confession may nevertheless be tainted if the investigator used the illegally obtained evidence to induce the confession, as, for example, by confronting the accused with illegally seized physical objects or by making him aware that his interrogator possessed the unlawfully obtained information. In such a situation it is necessary to determine whether the accused confessed because of the interrogator's improper use of the unlawfully acquired information or for other reasons. If the confession is the product of such information it must be excluded. Furthermore, in these situations there exists the possibility that the manner of interrogation may raise an issue as to the voluntariness of the confession if the circumstances indicate that the use of the illegally obtained evidence may have so overpowered the will of the accused as to deprive him of his freedom to elect to remain silent.

cess on appeal are not certain. Thus, while refusing to make a definitive constitutional holding that the subsequent statements were inadmissible, and also refusing to hold that the proceedings were constitutional in toto, I find that the matter is at least in sufficiently serious doubt, that I cannot conclude that there is a substantial probability of success.

I have reached my conclusion that the plaintiff is not entitled to a preliminary injunction on a record which clearly establishes that the plaintiff is an admitted homosexual. I am fully aware of the different authorities which might be relevant in cases where (1) the plaintiff denies that he is a homosexual and asserts without equivocation his innocence of the actual charge, and (2) the court has found that " * * * petitioner should prevail on appeal to the Board of Review." See Covington v. Schwartz, 230 F.Supp. 249, (D.C.N.D.Cal., 1964) (aff'd. 341 F.2d 537 (9th Cir., 1965).) Plaintiff relies not on his innocence of the charge, but rather on the defendants' alleged failure to provide him with a hearing free from error, and the use of allegedly inadmissible evidence against him in that proceeding.

At the hearing held before this Court, I requested counsel to stipulate that all of the evidence in this matter could be considered as if it were on a hearing for a final injunction, and thus I would make my ruling as if it were on a final injunction rather than a preliminary injunction. Thus, I hold that the plaintiff is not entitled to a preliminary injunction and had the government certified this evidence, for final adjudication, as suggested, I would have denied a final injunction.

In dismissing the request for a preliminary injunction, jurisdiction will be retained to review any matters which may be appropriate on the law side.

To the extent that what I have said constitutes additional Findings of Fact and Conclusions of Law, this opinion shall be considered as adopting them. I also affirm plaintiff's request for Findings of Fact Nos. 1–6, Nos. 10 and 11, Nos. 12(a)–13, Nos. 16–21, Nos. 23–25, No. 28 and Nos. 30–36, and I affirm defendants' request for Findings of Fact Nos. 1–2, Nos. 4–15, Nos. 17 and 18, Nos. 20–23, Nos. 25 and 26, Nos. 28–31, No. 33 and Nos. 36 and 37. Plaintiff's request for Conclusions of Law Nos. 1–10, No. 11(p) (t) and (u) are affirmed. Defendants' request for Conclusions of Law Nos. 1–2, No. 9, No. 11, No. 13 and Nos. 14 and 15 are affirmed. All other requests for Findings of Fact and Conclusions of Law not in harmony with those stated in this Opinion are severally denied.

## FINDINGS OF FACT

1. The plaintiff is a Sergeant First Class in the United States Army. He is assigned to the United States Army Advisory Group (National Guard) in Wilmington, Delaware. He has served in the Army for seventeen years and eleven months (all of which time on active duty) and will be eligible for retirement on January 31, 1968. The current enlistment of the plaintiff began on March 30, 1962. The plaintiff was granted an honorable discharge from the United States Army on March 30, 1962. The plaintiff's military record shows no prior court martials or administrative board proceedings.

2. On or about November 15, 1964, an anonymous letter was received by Headquarters, Department of the Army, Washington, D. C., which alleged certain homosexual activities and tendencies on the part of the plaintiff. Subsequent to the receipt of this letter an investigation was undertaken by agents of the Army Criminal Investigation Division in Philadelphia, Pennsylvania. The sole original basis of the Army's investigation was this anonymous letter.

3. On January 28, 1965, Colonel Wilbur E. Davis, the plaintiff's commanding officer, was advised by agents of the C.I.D. of the allegations of homosexuality made against the plaintiff and his permission for a search of the plaintiff's desk was requested. The Colonel gave

the agents permission to search the desk which desk was owned by the Army but used by the plaintiff.

4. As a result of this search the investigators found letters to the plaintiff from persons named Howard R. Holt, Robert Hodnett and Carl Lawrence which contained language and phraseology suggestive of homosexual inclinations. The sole basis on which Colonel Davis authorized the search was the anonymous letter of November, 1964. The plaintiff was not present at the time of the search.

5. On February 24, 1965, the plaintiff was confronted at his post by Victor D. McGuire, Jr., a military criminal investigator with the accusations made against him, and was told that he was under investigation. He was asked to make a statement. After reflection and discussion with Sergeant Major Humphrey, the plaintiff decided to go to the C. I.D. office and give a statement.

6. Later on that same day, the plaintiff went to the office of the C.I.D. in Philadelphia, Pennsylvania, and after having been given a warning under Article 31, Uniform Code of Military Justice, 10 U.S.C., § 831, and also after having subscribed to a statement that he was aware of his rights under Article 31, the plaintiff admitted acts of homosexuality from 1955 up to and including December of 1964. Plaintiff at this time also identified the writer of the anonymous letter as Mrs. Melba Custis.

7. On February 26, 1965, the plaintiff, after having been given an explanation of his rights under Article 31, gave an additional statement wherein he admitted additional homosexual acts.

8. After receiving notice of the investigation from the C.I.D., Colonel Davis removed the plaintiff's security clearance, had the combination on the office safe changed and took action to suspend favorable personnel action as required by Army regulations.

9. On March 9, 1965, the plaintiff was referred to the Valley Forge Army Hospital, Phoenixville, Pennsylvania, for psychiatric treatment and evaluation.

10. In April of 1965, plaintiff's Commanding Officer received orders transferring him to an overseas station but because of the pending investigation of plaintiff's homosexual activities, was compelled to cancel them.

11. On May 25, 1965, the plaintiff's Commanding Officer, Colonel Davis, forwarded to the Commanding General, Second United States Army, the plaintiff's case and indicated that the plaintiff did not desire to submit a resignation or accept a discharge. He recommended the plaintiff's retention in the service with the proviso that he not be made eligible for security clearance.

12. The plaintiff's case including all pertinent records, documents, reports and medical evaluations was considered by the appropriate officers at Headquarters, 2nd Army and as a consequence on July 7, 1965, by order of the Commanding General was referred to a Board of Officers for consideration in accordance with paragraph 105 A.R. 635-89. The Commanding General of the Second Army is Lieutenant General William F. Train.

13. The plaintiff received timely oral notice of the Board of Officers' Proceedings, but did not receive written notice until September 23, 1965, the date of the hearing. No request for a continuance was made at the hearing by either plaintiff or his counsel.

14. The Board of Officers convened in open session on September 23, 1965, at Fort George C. Meade, Maryland, at which time the plaintiff, Robert L. Crawford, personally appeared and was represented by counsel, 1st Lt. William J. Eaton, a member of the Judge Advocate General's Corps and the South Carolina Bar. Plaintiff did not challenge any member of the panel "for cause".

15. The United States did not present any witnesses, either in person, by deposition or statement, who had witnessed any of plaintiff's homosexual acts. At the hearing eighteen exhibits were

presented by the Recorder and accepted by the Board. The plaintiff's counsel objected to the introduction of the anonymous letter, and the three letters found in plaintiff's desk by the C.I.D. agents. These exhibits were withdrawn and were not considered by the Board when it made its findings and recommendations.

16. The Board of Officers as constituted under A.R. 15-6 and A.R. 635-89 has no subpoena powers and under its organic laws has no specific requirement for confrontation and following of the technical rules of evidence, A.R. 15-6, paragraph 10. It is in essence an adversary proceeding.

17. At the Board hearing the plaintiff offered as witnesses on his own behalf Captain W. Schlanger, an army psychiatrist, Rev. Frank B. Mitchell, his pastor, and Mrs. Nana Dunn, an aunt. All but Mrs. Dunn indicated knowledge of plaintiff's homosexual tendencies.

18. The plaintiff himself testified and admitted to homosexual activities on his part from 1955 up to and including December, 1964, and the fact that he had sought and obtained both medical and religious counseling. Plaintiff's counsel in his closing argument admitted that the plaintiff was a homosexual.

19. The Board was properly constituted under the appropriate army regulations and the regulations provide that the junior member of the Board acts as a recorder with vote when no recorder has been specifically designated. Although the only prehearing discussion by the Board members was about the calling of witnesses, the president of the Board, Lt. Colonel Moudy, had the record in his possession for some time prior to the hearing.

20. The plaintiff's counsel was aware of the recorder's function as a member of the Board and also of certain prehearing discussions.

21. The case against the plaintiff was prepared and presented to the Board by Lieutenant Jed Abrams.

22. On October 4, 1965, the report and recommendation of the Board of Officers, finding the plaintiff a class II homosexual as defined in A.R. 635-89 and recommending that he be eliminated from the service and issued a General Discharge Certificate under honorable conditions were forwarded to the Commanding General of the Second Army.

23. On October 29, 1965, the Commanding General of the Second Army approved the findings and recommendation of the Board which were hand carried to him and plaintiff's Commanding Officer was notified to effectuate his discharge on November 12, 1965.

24. The Board of Officers did not make specific findings of fact other than their general finding that the plaintiff was a class II homosexual as defined in A.R. 635-89.

25. The plaintiff from January, 1965, to the date of trial had continued to perform the same military functions and duties and he has been working without a security clearance since February, 1965.

26. A General Discharge on the basis of homosexuality will adversely stigmatize the plaintiff for the remainder of his life, and he would have difficulty in getting employment with most reputable companies.

27. Should the plaintiff be discharged he would lose all of the privileges to which he is now entitled.

28. The Commanding General, Second United States Army, has denied plaintiff's appeal. The plaintiff has appealed to the Army Board for Correction of Military Records which has declined to hear his appeal, holding that it is premature in light of the instant action.

29. Unless a stay of discharge is granted, the plaintiff will be promptly discharged from the United States Army with a less than honorable discharge.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of the suit and of the parties. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958).

954

2. The plaintiff has exhausted all administrative remedies presently available to him prior to his ordered discharge. If discharged he has recourse to the Army Board for the Correction of Military Records, the Discharge Review Board and the Secretary of the Army.

3. Homosexuality and sodomy are criminal offenses under the Uniform Code of Military Justice and the officer exercising General Court Martial jurisdiction over the plaintiff had the authority to court martial him for his alleged homosexual acts.

4. The Commanding General of the Second Army, the convening authority in this case having authority to direct the plaintiff's discharge acted properly and in accordance with his authority.

5. The plaintiff will suffer irreparable harm if he is given a less than honorable discharge, however, he has not demonstrated that his continued presence in the service will not harm the Army and the public interest.

6. The plaintiff has no constitutional or statutory right to remain in the United States Army until he has sufficient time to retire with pecuniary benefits. His discharge does not deprive him of any property rights. Reed v. Franke, 297 F.2d 17 (4th Cir. 1961).

7. The authority of the President acting through the Secretary of the Army and his subordinates to discharge army personnel, in the absence of statutory restrictions has long been recognized by the Courts. Schustuck v. Herren, 234 F.2d 134 (2nd Cir., 1956).

8. Specific statutory authorization for the discharge of the plaintiff is found in 10 U.S.C. 3811 as implemented by A.R. 15–6 and 635–89.

9. The search of the plaintiff's desk by agents of the Army C.I.D. was effectuated without probable cause.

10. The failure of the Army authorities to follow completely the regulations governing a Board of Officers' proceedings did not necessarily vitiate those proceedings.

ORDER

And now, on this 12th day of January, 1966, plaintiff's motion for a preliminary injunction is denied and that motion is dismissed; however, jurisdiction is retained for a final adjudication after a final hearing.