Richard W. **COURTNEY**, Plaintiff,

v.

**SECRETARY OF the AIR FORCE**, United States of America, Defendants.

Civ. No. 66–1582.

United States District Court
C. D. California.

May 12, 1967.

Walter C. Bowman, Los Angeles, Cal., for plaintiff.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Herbert M. Schoenberg, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

FERGUSON, District Judge.

Plaintiff in this action seeks a judgment (1) declaring his discharge as 2nd Lieutenant in the Air Force under conditions other than honorable to be null and void, (2) ordering the Secretary of the Air Force to rescind the discharge and reinstate plaintiff as a commissioned officer, and (3) for damages in the sum of $10,000.00.

The defendants have moved for a summary judgment under Rule 56 of the Federal Rules of Civil Procedure and have attached to the motion the

military record of the plaintiff. In determining the motion the Court has followed the rule which needs no citation that a motion for summary judgment will not lie where there is a genuine issue as to a material fact. The burden is upon the moving party and the matters presented must be construed most favorably to the party opposing the motion. The facts as herein set forth are clearly established from the plaintiff's military records.

Plaintiff initially enlisted in the United States Air Force on October 23, 1962, in the grade of Airman Basic. On March 26, 1963, at the completion of Officer Training School, he was appointed as a 2nd Lieutenant in the Reserve of the United States Air Force. On or about June 6, 1963, he was transferred from Lackland Air Force Base, Texas, to Oxnard Air Force Base in California. From June 6, 1963, until April 2, 1965, when plaintiff was separated from the service, he remained stationed at Oxnard Air Force Base.

As the result of an investigation by the Office of Special Investigations, plaintiff, on September 24, 1964, was notified by his Commander that information had been received which warranted initiation of action under Air Force Regulation 35–66. Plaintiff was advised that he could tender his resignation under Air Force Regulation 36–12, or administrative elimination action under Air Force Regulation 36–2 could be considered by the Commander of the Major Air Command. He was advised of his right to counsel, either civilian or military, and Captain John F. Ingram, an Air Force Judge Advocate, was appointed to assist him.

The reason for this action was the receipt by plaintiff's Commanding Officer of three sworn statements concerning plaintiff's homosexual conduct. Two of the three statements were from individuals who had been friends of the plaintiff for several months. The third statement was obtained from plaintiff himself. Subsequent to these statements, another statement was obtained.

On September 25, 1964, the plaintiff was given a medical examination at his base. In giving his medical history he stated that he had homosexual tendencies.

On September 29, 1964, plaintiff submitted his resignation pursuant to paragraph 20e of Air Force Regulation 36–12. Plaintiff stated in his resignation letter that he understood he would be discharged under other than honorable conditions and acknowledged that he had been counseled by Captain Ingram. In a statement attached to the resignation letter, plaintiff stated in part:

"While I may have participated in homosexual activity, I am not in fact a homosexual. The acts were the result of loneliness and emotional immaturity. They were experimental in nature. I do not feel that such acts will occur again."

On October 2, 1964, three days after plaintiff had tendered his resignation, he submitted a request to withdraw said resignation. In this request, he stated that his appointed counsel had advised him of all his remedies, but that he had been confused by the advice of others. He did not deny the homosexual charges, but wanted to withdraw his resignation in an attempt to obtain a better discharge.

On November 20, 1964, the request to withdraw the resignation was approved by the Secretary of the Air Force. Thereafter, on December 11, 1964, plaintiff was notified that his Commander was initiating action against him under Air Force Regulation 36–2. Plaintiff was advised to contact Captain James M. Duenow, an Air Force Judge Advocate, to discuss his rights and privileges. Furthermore, he was furnished with copies of Air Force Regulation 36–2 and Air Force Regulation 36–12 and told to familiarize himself with Air Force Regulation 36–2, particularly concerning his rights set forth in the action against him, and paragraph 15 which explained the action which could be taken against him. He was also advised that the burden of proof rested with him to produce

evidence establishing that he should be retained in the Air Force. He was given the right to submit any written statements or other documentary evidence that he felt should be considered in evaluating his case. At this time he was furnished copies of the evidence against him consisting of statements of the three individuals previously referred to and plaintiff's own statement which had been obtained during the special investigation.

On December 21, 1964, plaintiff submitted his answer to the Commander's letter. In his answer, plaintiff referred to his satisfactory performance of duty and anxiety reaction which he claimed could result in a disability retirement. He did not deny the allegations against him, but claimed that his statement was obtained without advising him of his right to counsel or his right to remain silent. In accordance with the provisions of Air Force Regulation 36–2, the case file was then forwarded to the Air Force Personnel Board for consideration. On January 26, 1965, the Personnel Board determined that plaintiff had failed to establish that he should be retained in the Air Force and recommended that plaintiff be discharged under other than honorable conditions pursuant to 10 U.S. C. § 1163. On March 12, 1965, the recommendation of the Board was approved by direction of the President pursuant to 10 U.S.C. § 1162, and the plaintiff was ordered discharged under other than honorable conditions. By Special Order dated March 31, 1965, plaintiff was discharged under other than honorable conditions from all appointments in the United States Air Force, effective April 2, 1965.

On June 7, 1965, plaintiff submitted an application for a review of his discharge utilizing DD Form 149. His application was referred to the Air Force Discharge Review Board within the purview of 10 U.S.C. § 1553, which held a formal hearing on September 9, 1965, which was attended by plaintiff and his present counsel, at which time plaintiff was allowed to introduce any and all evidence he considered pertinent to his case. Upon conclusion of the hearing, plaintiff was notified that no change in the nature of his discharge was warranted.

As plaintiff submitted his application on DD Form 149, his case was automatically referred to the Air Force Board for Correction of Military Records (see 10 U.S.C. § 1552), which Board denied the application without further hearing upon determination that plaintiff had not submitted sufficient evidence of error or injustice to warrant a hearing. Approximately one year after the Air Force Board for the Correction of Military Records denied plaintiff's application, the instant action was commenced.

Plaintiff's amended complaint alleges that plaintiff's discharge was in violation of the 4th, 5th and 6th Amendments of the Constitution in that plaintiff was not afforded the right of cross-examination and that the findings and recommendations concerning his discharge were arbitrary and capricious. Plaintiff also alleges that the Board of Officers which heard his case was biased against him.

Aside from the fact that these allegations are totally unsupported by the record, they are mere conclusions of little or no probative value.

At no time has plaintiff in his pleadings, his papers in opposition to the motion, or during oral argument been able to point out to the Court what, if any, Regulations or Statutes were violated in the course of the administrative proceedings against him.

In several earlier cases dealing with allegations of a similar nature, the courts have held that the procedural guarantees of the 5th and 6th Amendments are not necessarily pertinent to administrative hearings.

In the case of Reed v. Franke, 297 F.2d 17 (4th Cir. 1961), a Navy enlisted man with over eighteen years' service to his credit, challenged the right of certain officers of the United States Navy to separate him from naval service with a general discharge under honorable con-

ditions. The Navy sought to discharge Reed because of a perplexing alcoholic problem that he had. After being convicted by a special court-martial of driving an automobile while under the influence of alcohol, Reed's commander recommended that he be discharged from naval service by reason of unsuitability. Thereafter, the Chief of Naval Personnel directed that Reed be separated with a general discharge, under honorable conditions, by reason of unsuitability. The pertinent provisions under which Reed was to be discharged made no provision for a hearing prior to his general discharge. In this respect, Reed underwent a similar procedure to that in the matter here.

The Fourth Circuit, in finding against Reed and upholding the pertinent Naval Regulations, alluded to the fact that Congress had provided for a review of discharges and dismissals from military departments by virtue of enacting 10 U.S. C. § 1553, which established a Discharge Review Board, composed of five members, before whom the person requesting review is permitted to appear in person or by counsel:

> "Thus the reviewing board is empowered to nullify the action taken if determined to be erroneous and, in lieu thereof, to order an honorable discharge to which Reed claims to be entitled. The findings of the board are subject to review only by the Secretary of the military department affected." [297 F.2d 17, 27.]

Moreover, the Court went on to discuss the procedure involved in discharging Reed and then first holding a hearing. The Court stated, at page 27, that:

> "The fact that the hearing provided by statute does not precede, but follows, Reed's separation from the service does not make the hearing inadequate. The statutory review is a part of the protective procedure and due process requirements are satisfied if the individual is given a hearing at some point in the administrative proceedings."

In this case, plaintiff was separated from the service by judgment of the Air Force Personnel Board (and within prescribed Air Force Regulations) and was then given a hearing before the Air Force Discharge Review Board pursuant to 10 U.S.C. § 1553. At this hearing plaintiff was entitled to present any and all evidence available to him and to call any and all witnesses he deemed essential to prove that he was wrongfully separated from the United States Air Force.

The District Court in Beard v. Stahr, 200 F.Supp. 766 (D.C.D.C.1961), was again faced with the problem of administrative discharge, but this time of an officer who had been in the service of the United States Army for some 19 years. Accused of being a homosexual, Beard raised the objection that the statute under which he was separated was unconstitutional in that it placed the burden of proof on the officer instead of the Government and, secondly, that there was no provision for confronting the officer with witnesses against him.

The Court dealt with the first objection by stating, at page 775, that:

> "Bearing in mind that the purpose of the statute [10 U.S.C. 3781] is not to provide for trial of officers on specific charges, but to create an administrative machinery and routine for eliminating officers who do not meet the required standards, there is no constitutional objection to placing the burden of proof where it is deemed appropriate to do so in the interests of the public welfare."

As to the second objection, the Court stated:

> "The constitutional provision for confrontation is a vital feature of the Bill of Rights. It is intended, however, for trials in the criminal courts and is a safeguard in the administration of the criminal law. It does not necessarily have an essential function in other activities of Government." [200 F.Supp. 766, 775.]

In *Beard* the District Court granted summary judgment against the officer, who

applied to the Supreme Court for a stay. In a per curiam opinion [370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321 (1962)], five members of the Court vacated the District Court's judgment, and remanded with instructions to dismiss the complaint. The basis for the Supreme Court ruling was that the action was premature, in that the Secretary of the Army had not yet exercised his authority to remove the officer from the active lists of the Regular Army; if he ultimately did so act, the officer thus being removed, adequate procedure existed for redress.

In the recent case of Unglesby v. Zimny, 250 F.Supp. 714 (N.D.Cal.1965), an enlisted man who was about to be discharged from the service claimed that the hearing afforded him by the administrative board denied him the opportunity to confront and cross-examine the witnesses against him in violation of the 5th and 6th Amendments. The Court stated, quite succinctly:

"There has been no United States Supreme Court decision holding that confrontation and cross-examination are constitutionally required in administrative hearings." [250 F.Supp. 714, 717–718.]

In this case, the plaintiff had an opportunity to submit any statements or evidence deemed necessary both to the Air Force Personnel Board and to the Air Force Discharge Review Board. To the Air Force Personnel Board he submitted only a letter, stating his comments which at best do not deny the accusations against him, and referring to Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which is particularly inapplicable to non-criminal situations.

Before the Air Force Discharge Review Board he was represented by counsel. Again, plaintiff called no witnesses but merely denied that he was a homosexual or that he had engaged in homosexual acts with specified individuals.

He did submit several letters favorable to him, plus a letter from a psychiatrist who examined him on December 15, 1964. The report of the psychiatrist contains the following paragraph:

"It would seem to me if the Air Force thinks that because of alcoholic indulgence by Lt. Courtney, who is not an alcoholic, and does not ordinarily imbibe more than is considered normal, will at some future date perhaps commit an overt homosexual act, and therefore possibly become a security risk, he should be eliminated from the service, but in no way punished for an act he may possibly commit in the future."

Plaintiff also alleges that he was not advised of his rights to remain silent or of his privilege against self-incrimination at the time his statement was given to the Office of Special Investigation. However, plaintiff's own statement sets forth that he was informed of the nature of the offense with which he was suspected of being involved, and that he was advised that he need not make any statement regarding the offense and that any statement made may be used as evidence against him. Further, he signed the statement stating that it was true as written and that it was voluntary and of his own free will and made without any coercion, unlawful influence, or unlawful inducement.

Plaintiff's bare assertion that he was deprived of his rights under the 4th Amendment is totally unsubstantiated by any evidence anywhere of an unlawful search or seizure.

The Air Force policy regarding homosexuality is set forth in Air Force Regulation 35–66, paragraph 3. After receiving evidence of plaintiff's acts, proceedings were initiated against him under Air Force Regulation 35–66, paragraphs 4(b), 12(b) and 13(b) as a Class II homosexual. Paragraph 13(b) specifically provides that:

"If the officer does not tender his resignation, a complete report will be forwarded in accordance with paragraph 14 to the commander exercising general court-martial jurisdiction who will give consideration to trial by gen-

eral court-martial. In the event he deems trial inadvisable, he will forward the documented case direct to the major air commander for decision as to whether action should be initiated under AFR 36–2."

After plaintiff withdrew his resignation, separation proceedings were begun pursuant to Air Force Regulation 36–2, paragraphs 3(a) and (b), 4(d) (2), 15, 35, 36 and 37. Since plaintiff was a probationary officer, his case, pursuant to paragraph 35(a) (1), was forwarded to headquarters of the United States Air Force for consideration by the Air Force Personnel Board. Paragraph 36 specifically states:

"The officer will not appear before the board, nor will he be represented by counsel, unless the board during its deliberations determines that his presence, with or without counsel, is necessary to properly evaluate his case."

Aside from the applicable Air Force Regulations, 10 U.S.C. § 1162 provides that:

"Subject to other provisions of this title, reserve commissioned officers may be discharged at the pleasure of the President."

■ Here, plaintiff, as a probationary officer, had no right to either a Court-martial or a Board of Inquiry. The procedure by which he was administratively separated, and then given a hearing before the Air Force Discharge Review Board, was in accord with both case and statutory law and the applicable Air Force Regulations governing this type of proceeding.

■ Air Force Regulation 31–3 (Air Force Board for Correction of Military Records), paragraph 9, which is the prototype of 10 U.S.C. § 1552, dealing with applications for correction of military records, provides, in part, as follows:

"Each application and the available military or naval records pertinent to the corrective action requested will be reviewed to determine whether to authorize a hearing or to deny the application without a hearing."

Not only does 10 U.S.C. § 1552 remain specifically silent on the right to a hearing before the Board for the Correction of Military Records, but in Reed v. Franke, supra, the Court specifically held that:

"Under 10 U.S.C. § 1552, the Secretary of a military department is authorized to correct any military record when he considers it necessary to correct an error or remove an injustice. By this section there is no provision made for a formal hearing at which the serviceman or his counsel may be present and the procedure is not mandatory, yet a civilian board may be called to act in behalf of the Secretary in considering the matter." [297 F.2d 17, 27.]

Accordingly, plaintiff's allegation that he was entitled to a hearing before the Air Force Board for Correction of Military Records is spurious.

The courts are severely limited in their review of military discharges. Prior to Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958), military matters were generally judicially nonreviewable, except through Writ of Habeas Corpus challenging detention of military prisoners. A long line of Supreme Court decisions held that administration of military matters is largely an executive function. See Orloff v. Willoughby, 345 U.S. 83, 93, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), where the Court said " * * * judges are not given the task of running the Army. * * * Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters"; and Reaves v. Ainsworth, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911), where the Court held that a military tribunal acting within its lawful powers cannot be reviewed or set aside by the courts. *Harmon* did not change the general rule but held that the Secretary could, under the statute, consider only military records in determining the type of discharge to award a serviceman. In the present case, the dis-

charge was based on conduct occurring during plaintiff's current period of service. The discharge was effected pursuant to applicable regulations and was within the authority conferred by statute.

Section A(3) of Air Force Regulation 36-2, Officer Personnel, Administrative Discharge Procedures, sets forth the following policy:

"An individual does not have an inherent right to continued service as an officer; it is a privilege which may be terminated when such action is determined to be in the best interest of the Air Force. By virtue of his appointment, an officer enjoys a position of trust and assumes a continuing responsibility for leadership and for conducting himself in an exemplary manner at all times. The Air Force has no place for officers who show themselves unworthy of officer status by failing to meet and maintain these high standards of professional and personal conduct. Prompt identification and disposition of these officers is essential. Probationary officers in particular will be subjected to the closest scrutiny during their 3-year probationary period to assure that their qualifications and actions justify their continued service."

The Air Force has lawfully determined that plaintiff did not meet the requirements to remain as an officer. In light of the facts and conclusions set forth herein, it is apparent that plaintiff has no legal grounds for challenging his discharge.

It is ordered that the motion of the defendants for a summary judgment is granted, and the action is dismissed with prejudice against the plaintiff.

It is further ordered that this Memorandum Opinion shall constitute the Findings of Fact and Conclusions of Law.

It is further ordered that the Clerk this date shall serve copies of this Memorandum Opinion by United States mail upon the attorneys for the parties appearing in this cause.