Captain Denny L. LYNES,
Petitioner,

v.

Major General Richard YOUNG, and
James R. Schlesinger,
Respondents.

No. 74 CV 14-W-1.

United States District Court,
W. D. Missouri, W. D.

May 31, 1974.

Dale H. Close, Richland, Mo., for petitioner.

William G. Eckhardt, Major, JAGC, Joseph R. Beatty, Captain, JAGC, Bert C. Hurn, U. S. Atty., Vernon A. Poschel, Asst. Dist. Atty., Kansas City, Mo., for respondent.

MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

Petitioner, a captain in the United States Army, instituted the present action seeking to enjoin his discharge from the Army on any basis other than medical with a percentage disability rating. The case presently pends on respondent's alternative motion to dismiss for lack of jurisdiction and for summary judgment. For the reasons stated below, we conclude that the motion should be denied and that the restraining order issued by this Court on January 9, 1974 should be extended pending petitioner's exhaustion of his military remedies.

I.

Petitioner, currently assigned to active duty at Fort Leonard Wood, Missouri, was previously assigned to active duty in the Republic of Vietnam. While on patrol on March 14, 1968, he was injured by an explosion of a Claymore mine. After emergency treatment in the combat zone, he was transferred to the United States where he was given additional medical care over an extended period of time.

On June 12, 1973, a Medical Board consisting of three Army physicians

found that the petitioner had the following medical conditions:

5296 Wound, penetrating, due to fragment, right frontal lobe, with depressed skull fracture and right frontal intracerebral hematoma. Post operative right parietal-frontal craniel defect. 4x3 cm. (greater than two square inches or greater than size of half dollar). LD: Yes.

6080 Left Homonymous hemianopsia, residual of right frontal intracerebral hematoma, possibly secondary to pressure on temporal lobe and damage to optic radiation. LD: Yes.

8045 Minimal paresis of left upper extremity with minimal hypesthesia of left upper extremity secondary to Diagnosis # 1 LD: Yes.

Chronic frontal headache, mild, post-traumatic. LD: Yes.

The Board unanimously found that petitioner was "medically unfit for further military service in accordance with current medical fitness standards." These findings were approved by the Commanding Officer on June 27, 1973.

The above findings were reviewed by the Army Physical Evaluation Board (PEB) which on July 18, 1973, found petitioner fit for military service, stating:

Available evidence does not indicate that member's ailments had any effect⸢ on his satisfactory performance of duty since 1968 injury. It appears that the conditions alleged to be unfitting were so characterized by medical personnel coincident with the physical examination conducted in connection with his involuntary relief from active duty.

The petitioner refused to concur and demanded a formal hearing with personal appearance. This hearing was held on August 27, 1973, and the PEB affirmed its earlier finding. Petitioner further appealed to the Army Physical Review Council, which upheld the Board's decision on October 26, 1973. Apparently, petitioner was not advised that relief could be sought before the Army Board of Military Records; in any event, petitioner did not seek such a review before he instituted the pending case.

On January 9, 1974, this Court issued a temporary restraining order enjoining respondent from discharging petitioner for a period of ten days. Subsequent orders of this Court have extended that restraining order during the processing of this suit.

## II.

Respondent's alternative motion is based upon a theory of exhaustion of remedies. Under 10 United States Code § 1552(a), the Army Board for Correction of Military Records (ABCMR) is empowered to review and correct petitioner's military records, including the findings made by the Physical Review Council.[1] Cf. Hendrick v. United States, 150 Ct.Cl. 437 (1963). As petitioner concedes, he has made no application for relief to the ABCMR and has therefore not exhausted his military remedies.

But petitioner's failure to exhaust his military remedies does not automatically require that this Court dismiss the pending action. In Covington v. Schwartz, 230 F.Supp. 249 (N.D.Cal. 1964), modified 341 F.2d 537 (9th Cir. 1965), an Army enlisted man sought to enjoin the Army from dishonorably discharging him pursuant to an allegedly

---

1. This statute reads in part:

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. . . . Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

unconstitutional Board of Officers inquiry. The defendants moved to dismiss on the ground that, since no application for relief was made to the ABCMR, plaintiff had failed to exhaust available military remedies.

The district court, while agreeing that plaintiff had not exhausted, refused to dismiss the action. Instead, the Court noted that under 5 U.S.C. § 1009(d),[2] it could stay the discharge pending completion of the military's administrative processes. More importantly, it found that plaintiff had fulfilled all of the conditions traditionally required for the granting of such a stay:

> (1) A likelihood that petitioner will prevail on the merits of the appeal;

> (2) Irreparable injury to the petitioner unless the stay is granted;

> (3) No substantial harm to other interested persons; and

> (4) No harm to the public interest. [Id. at 252]

Under the circumstances of that case, the court concluded that it was appropriate to stay the upcoming discharge pending a final determination by the ABCMR.[3] *Accord,* Sohm v. Fowler, 124 U.S.App.D.C. 382, 365 F.2d 915 (D.C. Cir. 1966); Nelson v. Miller, 373 F.2d 474 (3rd Cir. 1966); Crawford v. Davis, 249 F.Supp. 943 (E.D.Pa.), cert. den. 383 U.S. 921, 86 S.Ct. 923, 15 L.Ed.2d 676 (1966).

We find the principles set forth in *Covington* and similar cases to be sound and properly applicable to this case. Our sole remaining task is to determine whether, under the facts of this case, a stay is properly granted.

2. This statute reads in part:

Upon such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . to issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

## III.

### *Likelihood of Success on the Merits*

In his petition for relief in this case, petitioner alleges the following errors by the Army Physical Evaluation Board:

> a. That the Board failed to find that petitioner was unfit for military duty under the provisions of Army Regulation 40–501.

> b. That the Board failed to consider the petitioner's evidence concerning his ability to perform duty with the United States Army.

> c. That the Board was bound by the rule of evidence known as preponderance of the evidence and the Board failed to give a legal interpretation to this rule of evidence.

> d. That in the formal hearing before the Board, the said Board agreed and stipulated that petitioner had an injury that was disabling and as a result thereof the petitioner presented no evidence on the disabling nature of the injury; that after the formal hearing of the Board, the President thereof advised the petitioner that the loss of the skull or a part thereof was not necessarily disabling.

Petitioner's likelihood of success on the merits must be viewed in light of the applicable regulations. From the record before us, however, it is clear that petitioner's claims are substantial. Army Regulation 40–501, ¶ 3–3(a) states:

> a. Normally, members with conditions listed in this chapter will be considered unfit by reason of physical disability; however, this chapter provides general guidelines and is not to be taken as a mandate to the effect

3. The district court concluded that the exhaustion doctrine also required an appeal to the Army Discharge Review Board (ADRB) pursuant to 10 U.S.C. § 1553, and therefore stayed the discharge pending that appeal. The Court of Appeals disagreed on this point, holding that exhaustion only required application to the ABCMR, since the ADRB review could only be obtained subsequent to discharge.

that possession of one or more of the listed conditions means automatic retirement or separation from the service. Each case must be decided upon the relevant facts and a determination of fitness or unfitness must be made dependent upon the abilities of the member to perform the duties of his office, grade, rank, or rating in such a manner as to reasonably fulfill the purpose of his employment in the military service.

One of these conditions is listed in ¶ 3–19:

Loss of substance of the skull with or without prosthetic replacement when accompanied by moderate residual signs and symptoms such as described in paragraph 3–28.

Paragraph 3–28(a), referred to above, states:

Any other neurological condition, regardless of etiology, when after adequate treatment, there remain residuals, such as persistent severe headaches, convulsions not controlled by medications, weakness or paralysis of important muscle groups, deformity, incoordination, pain or sensory disturbance, disturbance of consciousness, speech or mental defects, or personality changes of such a degree as to definitely interfere with the performance of duty.

The Army's own diagnosis makes it clear that petitioner's conditions are such as to normally require a finding of unfitness. Because the PEB's report of July 18, 1973 did not even state a disability description and because it concluded only that "available evidence does not indicate that member's ailment had any effect on his satisfactory performance of duty since 1968," we find and conclude that there is a reasonable likelihood that petitioner will prevail on the merits.

4. For example, 38 U.S.C. § 610(a) provides in part:

(a) The Administrator, within the limits of Veterans' Administration facilities, may furnish hospital care which he determines is needed to—

## Irreparable Injury to Petitioner

It is clear from the several cases which have dealt with the issue that discharge from the military service does not, standing alone, irreparably injure the discharged serviceman, since lost pay, benefits, and rank may ultimately be restored. See, e. g., McCurdy v. Zuckert, 359 F.2d 491 (5th Cir. 1966). On the other hand, some courts have found "special circumstances" in which the failure to grant an interim stay would lead to such a result. See e. g., Covington v. Schwartz, *supra.*

In gauging the effect on the petitioner of a discharge without a medical disability rating, this Court must recognize the substantiality of the head wounds suffered by petitioner while serving in the Republic of Vietnam. The administrative record discloses that petitioner has received and on occasion still receives medical care for his wounds. The availability of skilled medical care to the petitioner would thus seem to be of great importance. Indeed, in a letter to petitioner's commanding officer on November 2, 1973, Major L. M. Mitchell, Chief of the Disability Section of the Retirement Branch, stated that petitioner's assignments were to be subject to the following limitations:

No strenuous physical activity; no assignment to isolated areas where definitive medical care is not available and no assignment involving overhead work or handling of heavy materials of any type.

Discharge from the Army will, of course, deprive petitioner of further in-service medical treatment. Moreover, discharge without a medical disability rating will make it difficult for petitioner to receive medical care from the Veterans Administration.[4]

(1) (A) any veteran for a service-connected disability; or

(B) any veteran for a nonservice-connected disability if he is unable to defray the expenses of necessary hospital care;

Respondent, however, suggests that *this problem is easily solved*:

> Captain Lynes, after his release from active duty, could . . . seek any necessary treatment at civilian hospitals. If, after release from active duty, Captain Lynes incurs medical expenses which he would not have incurred had he been separated by reason of service-connected physical disability and if it is subsequently determined that he should have been so separated, there is precedent in the Court of Claims for recovery of medical expenses to which Captain Lynes would not have been put had he been separated as unfit by reason of a service-connected physical disability. Gearinger v. United States, 412 F.2d 862, 188 Ct.Cl. 512 (1969).

We express no opinion on the availability of relief in the Court of Claims under these circumstances. But even assuming such relief is available, we conclude that to put petitioner to the expense and uncertainty of such a course of action would constitute irreparable harm, both intrinsically and as a deterrent to seeking medical care in the civilian world when needed.

*Harm to Other Parties and the Public Interest*

From the record thus far made in this case, it seems clear that little harm to either the Army or the general public interest will result from petitioner's retention in service. In fact, it would be extremely difficult for the Army to argue that petitioner is unable to perform his duties, since the very basis of this suit is the Army's contention that he is fit to serve.

Respondents, however, rely on Pauls v. Secretary of Air Force, 457 F.2d 294, 298 (1st Cir. 1972), where the Court of Appeals, in vacating a district court order restraining the Air Force from forcibly retiring the petitioning officers, stated:

> The detriment to the Air Force in retaining officers it desires to retire is at least as great as that of the officers retired. Services of officers chosen for retirement will likely be of little benefit to the Air Force and will hamper the promotion of officers the Air Force desires to promote and may well impair the efficiency of the Air Force.

While that conclusion may have been justifiable under the facts of *Pauls*, we cannot reach a similar conclusion in this case. Contrary to respondent's suggestion, there is no indication that petitioner's retention would disrupt Army routine. Compare Crawford v. Davis, 249 F.Supp. 943 (E.D.Pa.1966). Nor would petitioner's retention have any appreciable impact on either the Army's promotion policies or reduction in force program. As for any impairment in military efficiency, petitioner's personnel file reflects the continuing excellence in his performance of assigned duties.[5] See Covington v. Schwartz, *supra*, 341 F.2d at 533.

(2) a veteran whose discharge or release from the active military, naval, or air service was for a disability incurred or aggravated in line of duty;

Under this section, a person with a disability discharge is automatically provided with hospital care without regard to its service connection. A veteran without such a discharge, however, must either show indigency or that the care is needed "for a service-connected disability." While this is not an insurmountable task, the administrative procedures required by Army regulations might impose a substantial hardship upon petitioner should he be in need of medical care after separation. See 38 CFR § 3.303, et seq.

5. This excellence is reflected by a Letter of Commendation placed in petitioner's personnel file on March 12, 1973 by his Commanding Officer. That letter states in part:

> I have noted with great satisfaction the exceptional performance of Company C, 4th Battalion during the End of Cycle Weapons Inspection conducted by DIO in February 1973. The inspection of 230 rifles with no deficiencies or shortcomings noted is a credit to you and your cadre's leadership skills. Many hours of painstaking attention to detail and diligent work were required to attain this accomplishment. It is an achievement which can be looked upon with pride by yourself and the members of your command.

## IV.

An additional consideration must be placed in the balance in regard to any possible harm to the military or the public interest. Had the petitioner been promptly advised in regard to the power of the Army Board for Correction of Military Records to "correct error or remove an injustice," and had petitioner been afforded such a review as a matter of course, it is possible that this case would not be pending in this Court.

Indeed, experience in Edmondson v. Ciccone, Consolidated Nos. 15911–1 and 16344–1, establishes that the Army Board for Correction of Military Records can move with dispatch when necessary and that had petitioner been properly advised of his appellate rights, the Board could well have acted before this Court has been able to enter this interlocutory order. Edmondson v. Ciccone, was a habeas corpus proceeding in which the petitioner attacked the validity of a court-martial conviction. The factual circumstances developed during the evidentiary hearing suggested that the Army Board for Correction of Military Records be afforded an opportunity to review the circumstances developed during the hearing. This Court stayed proceedings to permit such a review and was eventually able to dismiss the habeas corpus proceeding in light of the full remedial relief granted by the Board. In that case the Board was able to move with reasonable dispatch. We know of no reason why it cannot act with similar speed in connection with this case. It is not inappropriate to add the hope that the Army give consideration to changing its procedures to provide appropriate advice in regard to Board review. Such a change would eliminate the belated claim that a person in petitioner's situation has failed to exhaust his administrative remedies.

## V.

██ In view of the circumstances discussed above, we conclude that it is appropriate to continue the temporary restraining order currently in effect until such time as petitioner has exhausted his remedies before the ABCMR. As stated in *Covington, supra,* 230 F.Supp. at 253:

If this Court is to require plaintiff to pursue his available remedies, it has the duty to protect his status until such time as the Army has made its final determination, including that of the Discharge Board and the Army Board for Correction of Military Records.

It is therefore

Ordered (1) that respondent's Motion to Dismiss for Lack of Jurisdiction or In the Alternative for Summary Judgment should be, and the same is hereby, denied. It is further

Ordered (2) that this Court's order of January 9, 1974 as extended by our order of January 29, 1974, should be, and the same is hereby, extended until fifteen (15) days after the issuance of a final decision by the Army Board for Correction of Military Records on the issues raised by the petition filed in this action. It is further

Ordered (3) that within fifteen (15) days of this order, petitioner shall take all appropriate steps to procure review of his claims before the Board pursuant to 10 U.S.C. § 1552, and shall thereafter prosecute such claims with vigor and dispatch. It is further

Ordered (4) that counsel shall immediately report to this Court any and all action which may be taken by the Army Board for Correction of Military Records.