Cooke, J.
After a hearing, the board of the New York City Transit Authority unanimously voted to remove petitioner, on the ground of misconduct, from his position as Chief of Transit Police, dismissing him from the Transit Authority, effective March 11, 1975. Petitioner’s dismissal was upheld by the courts (51 AD2d 551, mot for lv to app den 38 NY2d 712). Prior to that date, however, petitioner had filed an application for service retirement with the New York City Employees’ Retirement System, effective March 13, 1975. Since petitioner *3 was not "in city-service” on March 12, 1975, his application, made pursuant to section B3-36.3 (subd h, par [4]) of the Administrative Code of the City of New York, was rejected, with petitioner being advised that the only benefit to which he was entitled at that time was a refund of his accumulated deductions contributed to the plan.
Subsequently, petitioner submitted an application for military veterans retirement pursuant to subdivision 2 of section B3-36.0 of the Administrative Code. This application, filed on June 11, 1975, was rejected on the ground that, upon his dismissal from the Transit Authority on March 11, 1975, petitioner ceased to be a "member” of the New York City Employees’ Retirement System. Petitioner thereafter commenced an article 78 proceeding seeking to annul the determination of respondents denying his applications for retirement. Special Term dismissed the petition. The Appellate Division in turn reversed, upholding the application to the extent of annulling the denial of retirement benefits under subdivision 2 of section B3-36.0 and granting the application therefor.
There should be an affirmance. A reading of the pertinent statutes can yield but one conclusion—that the Appellate Division determination, unanimously arrived at, granting petitioner’s application for retirement benefits under subdivision 2 of section B3-36.0 of the Administrative Code, was legally correct.
Subdivision 2 of section B3-36.0 of the Administrative Code, which section is entitled "Retirement; minimum ages for service retirement”, provides in part: "2. Notwithstanding any other provisions of this section or the provisions of any other section of the code to the contrary, a member who is an honorably discharged member of any branch of the armed forces of the United States, having served as such during the time of war and who has attained the age of fifty years, may retire upon his own request upon written application to the board setting forth at what time not less than thirty days subsequent to the execution and filing thereof his desires to be retired, provided that such member at the time so specified for his retirement shall have completed at least twenty-five years of allowable service” (emphasis supplied). Unlike subdivision 1, which expressly applies to a "member in city-service”* and *4 is therefore inapplicable to this discussion, as petitioner has conceded, subdivision 2 requires that an applicant be "a member” of the retirement system. Subdivision 2 does not state, by word or by inference, that such member be "in city-service” at the time of retirement.
A "member”, as used in subdivision 2 is defined in subdivision 6 of section B3-1.0 of the code: " 'Member’ shall mean any person included in the membership of the retirement system as provided in section B3-3.0 of the code.” Section B3-3.0, with an exception not relevant here, requires, generally, that "[a]ll persons in city-service” shall be members of the retirement system. These sections, B3-1.0 and B3-3.0, relate to the method of acquiring membership in the retirement system and have nothing to do with the bases on which termination is predicated.
Termination of membership in the retirement system is provided for in section B3-31.0 of the code, a section entitled "Termination of membership; miscellaneous”. Because of certain arguments advanced by the dissent, it is salutary to set forth the entire contents of that section, viz.:
"Membership in the retirement system shall cease upon the occurrence of any one of the following conditions:
"1. When the time out of city-service, other than time on a preferred civil service list or other than time in the armed forces of the United States in world war II of any member who has resigned or has been separated from the service through no fault of his own, and who has total service of less than twenty-five years, shall aggregate more than five years in any period not exceeding ten consecutive years since he last became a member.
"2. When the time out of city-service of any member, other than time on a preferred civil service list or other than time in the armed forces of the United States in world war II, who has resigned or has been separated from the service through no fault of his own, before reaching the age of retirement, and who has total service of twenty-five years, or more, shall aggregate more than ten years.
*5 ”3. When any member shall have withdrawn more than fifty per centum of his accumulated deductions.
"4. When any member shall have withdrawn the cash benefit provided by section B3-35.0 of the code.
"5. When any member shall die.
"6. When any member shall be retired on a pension.
"7. The provisions of paragraphs 1 and 2 of this section with respect to time spent in the armed forces of the United States in world war II shall not apply to county employees.”
It should be noted that, under the listed termination reasons of section B3-31.0, membership in the system is not terminated by dismissal from city service, nor can a termination for such a cause be legitimately inferred. Membership continues until the happening of one of the six specified events—none of which occurred here. The only reasonable construction which can be accorded the section is that, if the Legislature had intended to include other grounds for termination of membership, it would have done so. This court has no right to engraft other terms, other reasons, into the statute.
It is urged that "the literal language of the statute itself makes clear that * * * a 'member’ is entitled to a pension only if he 'retire[s] upon his own request’ ” (p 8). It is then noted that "petitioner’s severance was not on his own initiative, but as a result of a discharge” (id.). But, the quoted portion of the statute can hardly be considered dispositive of the question before us. Although there is no legislative history to explain this language, it is not unlikely that it was included to prevent a construction to the effect that a veteran not having so requested could be retired merely because he attained the age of 50 (cf. People ex rel. O’Brien v Scannel, 53 App Div 161, affd 164 NY 572). In any event, in light of the detailed nature of the retirement provisions, it is difficult to imagine that the Legislature would include a basis for disqualifying a veteran from his pension in the manner suggested to the contrary. Indeed, since in order to qualify the statute requires one to be "an honorably discharged member of any branch of the armed services” (emphasis added), the Legislature should be expected to have specifically included a requirement that a member taking advantage of this provision also be one who had not been discharged for misconduct, if that is what was intended. Furthermore, any reliance on the so-called "legislative history” of subdivision 2 of section B3-36.0 is *6 misplaced because it is not revealing or determinative as to the precise problem at hand.
The fact that "retirement” has been distinguished from "discharge” in other contexts (see, e.g., Jacobs v New Jersey State Highway Auth., 54 NJ 393, 397, quoted from by the dissent at p 8) is beside the point. In that case, the distinction was made because it was argued that the power to discharge an employee empowered the authority to force an early retirement (see p 401). The question here is whether the Legislature intended a retirement benefit conferred on certain veterans to be enjoyed only by those veterans who had not been discharged for misconduct. In this respect, the statute very specifically describes circumstances whereby membership in the pension system is terminated, and, for whatever reason, the Legislature has not included a discharge for misconduct as one of those circumstances. The Legislature has drafted a statute indicating an intention that one who served honorably in the service during a war should be entitled to a pension even under these circumstances. The statutory framework, properly read, admits of no other interpretation, and the court should not struggle for legislative intent simply because it is difficult to accept what appears to be an undesirable result.
This writing is obviously not intended to suggest any desire to assist an official or employee who has been found guilty of misconduct by his or her administrative agency. It is to point out that the matter should be solved by reference to the statutes, regardless of how unappealing the result may be. We should be constrained to follow the clear pattern of the statutes, since "courts, it is submitted, are not free to devise their own rules in a statutory field merely because their sense of justice impels them” nor do courts "sit as councils of revision on the legislative product” (see Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 436-437 [Breitel, J., dissenting]). We sit in a judicial role and not as legislators (see Montgomery v Daniels, 38 NY2d 41, 68 [Fuchsberg, J., concurring]).
Since petitioner has met all of the statutory requirements ([1] a member of the retirement system, [2] who is an honorably discharged member of the armed forces, [3] having served as such in time of war, [4] who has attained the age of 50 years, and [5] who has completed at least 25 years of allowable *7 service), he has the legal right to his pension under subdivision 2 of section B3-36.0 of the Administrative Code. If there is to be a change in the law, if the preference accorded such veterans is to be limited, it should come from the Legislature itself.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

 The first sentence of subdivision 1 of section B3-36.0 of the Administrative Code provides: "1. Any member in city-service may retire upon written application to the board setting forth at what time, not less than thirty days subsequent to the *4 execution and filing thereof, he desires to be retired, provided that such member at the time so specified for his retirement shall have attained the minimum age of retirement provided for the group of which he shall be a member at such time” (emphasis supplied).