OPINION OF THE COURT
Cooke, J.
Both of these appeals arise out of construction site accidents involving workmen killed as a result of the collapse of excavation trenches. Actions were commenced against the respective owners upon whose property the accidents occurred, notwithstanding that the actual work was at all times performed and directed by others. The issue presented in each case is whether an owner or general contractor may be held to answer for the damages suffered by a workman as a result of a violation of subdivision 6 of section 241 of the Labor Law absent a showing that they controlled, directed or supervised the work site. The Appellate Division held that the 1969 amendment to section 241 (L 1969, ch 1108, § 3, eff July 25, 1969) imposed liability on an owner even in the absence of control and direction of the work being performed by subcontractors. We affirm.
Defendants Philip and Patricia Sgarlata engaged the Cloutier Construction Corp. for the erection of a home on their land in the Town of Colonie. Cloutier in turn subcontracted the plumbing and heating work to Edward Allen. On August 17, 1973, the walls of a trench in which Allen was installing a sewer line caved in, causing injuries from which he subsequently died. An action for wrongful death and conscious pain and suffering was commenced by his estate representative against the Sgarlatas, as owners, Cloutier, as contractor, and the J. Ellrott Excavating Contractor, Inc., the lessor and operator of the equipment which had dug the trench. Each defendant answered and cross-claimed against the others. The Sgarlatas and Cloutier moved for summary judgment dismissing the complaint on the ground that an owner and general *297 contractor owe no duty to a subcontractor in the absence of any control or supervision over the subcontractor’s work.
Defendant Cornell University, the owner of property on its campus at Ithaca, contracted with third-party defendant A. Friederich & Sons Co., Inc., to erect an addition to the Wilson Synchrotron Laboratory. On November 19, 1971, employees of Friederich, one of whom was Jay B. Myers, were engaged in breaking concrete out of an old foundation so that a new footing and wall might be installed. An earthen embankment gave way and collapsed into the trench in which Myers was working causing his death. Cornell moved for summary judgment dismissing the complaint on the ground that it had no direct control over the performance of the work and that the area involved was not a common work area.
Plaintiffs in both cases predicate the owners’ liability on the post-1969 terms of subdivision 6 of section 241 of the Labor Law. The statute presently provides:
"All contractors and owners and their agents, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the folldwing requirements: * * *
"6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The board may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work shall comply therewith” (L 1969, ch 1108, § 3).
To determine whether liability may be imposed on a non-controlling owner pursuant to section 241, it is necessary to trace the long, and somewhat checkered, history of the statute, as well as its relationship to other worker safety legislation. Prior to 1962, section 241 was essentially identical to the present statute, although it contained no counterpart to the present subdivision 6 with respect to shoring excavation work. That statute (L 1909, ch 36, § 20, as amd by L 1911, ch 693; L 1913, ch 492; L 1919, ch 545, § 2), consisted of seven subdivisions, the first five of which contained specific, positive commands to all contractors and owners to provide protection deemed appropriate by the Legislature in connection with the construction or demolition of buildings or any excavation in *298 connection therewith. The duty imposed upon owners and general contractors by these subdivisions was "a flat and unvarying” one (Koenig v Patrick Constr. Co., 298 NY 313, 318), rendering them liable for a violation of their proscriptions even though the actual work might have been performed by an independent contractor (Semanchuck v Fifth Ave. & 37th St. Corp., 290 NY 412, 419; Bruno v Almar Residences Corp., 13 AD2d 232, 236, affd 11 NY2d 988). This nondelegable duty was made designedly broad to reach those who were thought to have the over-all responsibility for the construction of a building in which the Legislature deemed a particular employment inherently hazardous, irrespective of fault and despite lack of control. Thus, a violation of any of these five subdivisions, causing injury to a member of the protected class was held to have imposed absolute, first instance liability upon an owner or general contractor unrelated to questions of negligence (Joyce v Rumsey Realty Corp., 17 NY2d 118, 122; Walters v Rao Elec. Equip. Co., 289 NY 57, 61; Berla v Zambetti, 235 App Div 464, 465; cf. Haskins v City of New York, 28 AD2d 656, 657).
Subdivisions 6 and 7 of the pre-1962 version of section 241 proceeded on a different basis. These were the rule-making subdivisions, and provided generally that the Board of Standards and Appeals might make rules for the protection of workmen. Whereas a violation of any of the first five subdivisions gave rise to absolute liability, a violation of the administrative rules promulgated pursuant to subdivisions 6 and 7 " 'was simply some evidence of negligence which the jury could take into consideration with all the other evidence bearing on that subject’ ” (Conte v Large Scale Dev. Corp., 10 NY2d 20, 29, quoting Schumer v Caplin, 241 NY 346, 351). This disparity as to the effect of violations was based on the well-recognized principle that there is a clear distinction between the effect of a violation of an administrative regulation promulgated pursuant to statute, and a violation of a substantive provision of the statute itself (Bergen v East 84th St. Constr. Co., 16 NY2d 644; Prosser, Torts [4th ed], § 36, pp 197-198).
In 1962, the Legislature amended section 241 (L 1962, ch 450, § 3, eff Oct. 1, 1962), and substituted in place of the prior seven subdivisions, one paragraph which set forth general duties as to work operations for owners, general contractors and, for the first time, subcontractors to provide "reasonable and adequate protection and safety to the persons employed *299 [in the construction, demolition or excavation of a building] or [persons] lawfully frequenting such places.” This 1962 revision delegated the authority to make specific rules and regulations to administer the statute to the Board of Standards and Appeals. Moreover, the amended statute was devoid of any specific directions normally contained in statutes imposing absolute liability and, hence, a violation of the rules promulgated thereunder resulting in the injury of a member of the protected class was properly held to be merely some evidence of negligence on the part of some person (see Wright v Belt Assoc., 14 NY2d 129, 135).
In effect, then, a violation of these rules was simply a breach of the common-law duty, later codified (see Labor Law, § 200), of an owner or general contractor to provide a safe place to work to workmen on the construction site (see Iuliani v Great Neck Sewer Dist., 38 NY2d 885, 886; Rusin v Jackson Hgts. Shopping Center, 27 NY2d 103, mot for rearg den 27 NY2d 817). Since it was "well settled that the duty to provide a safe place to work is not breached when the injury arises out of a defect in the subcontractor’s own plant, tools and methods, or through negligent acts of the subcontractor occurring as a detail of the work” (Persichilli v Triborough Bridge & Tunnel Auth., 16 NY2d 136, 145), it followed that an owner or general contractor could not be held responsible for the negligent acts of others over whom he had no direction or control (Curtis v State of New York, 23 NY2d 976). The liability of an owner or general contractor under the 1962 amendment was, therefore, dependent upon a showing that they exercised some degree of control or supervision of the work site (e.g., Kappel v Fisher Bros., 6th Ave. Corp., 39 NY2d 1039, 1041; Tallarico v Long Is. Light. Co., 45 AD2d 845, affd 38 NY2d 733; Scavone v State Univ. Constr. Fund, 46 AD2d 895, 896).
It soon became all too evident that the intent of the Legislature — to give the workman in the hazardous employment of construction, demolition and excavation added protection, other than workmen’s compensation, in the form of nondelegable duties cast upon the owner and general contractor with ensuing liability for breach of those duties — was being easily circumvented under the 1962 version of section 241 by its requirement of control. Owners and contractors were able to insulate themselves from liability for injuries caused by dangerous and unlawful conditions on the job site, and indeed *300 were encouraged to disregard such conditions, lest they be found to be in control. More importantly, the inclination of an owner or contractor to engage a subcontractor predicated on price alone was greatly enhanced, with a concomitant disregard of the safety record and practices of the subcontractor.
Accordingly, in 1969 the Legislature again amended section 241 (L 1969, ch 1108, § 3), so as to once again place "ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor” (NY Legis Ann, 1969, p 407). The effect of this amendment was to restore to section 241 the vitality and protections which had previously existed and which had been removed from the statute by virtue of its 1962 amendment. This was accomplished by the re-enactment of the prefatory paragraph as it existed prior to the 1962 amendment, the deletion of subcontractors from the scope of the statute and the restoration of former subdivisions 1 through 5, which the 1962 amendment had excised. Similarly, subdivisions 7 and 8 of the 1969 amendment authorize the Board of Standards and Appeals to promulgate rules and regulations for the protection of workmen, a grant of authority identical to that contained in subdivisions 6 and 7 of the statute as it had existed prior to 1962. And, more importantly for purposes of these appeals, the 1969 amendment imposed on owners and contractors the nondelegable duty to insure that areas in which excavation work is being performed "shall be so constructed, shored * * * and conducted as to provide reasonable and adequate protection and safety to the persons employed therein” (Labor Law, § 241, subd 6).
Thus, the conclusion is inescapable that the change effected by the 1969 legislation was a substantial one, for it fashions absolute liability upon an owner or contractor for a breach of the duties imposed by subdivisions 1 through 6 of section 241 irrespective of their control or supervision of the construction site (cf. Rocha v State of New York, 45 AD2d 633, mot for lv to app den 36 NY2d 642). Doubtless this duty is onerous; yet, it is one the Legislature quite reasonably deemed necessary by reason of the exceptional dangers inherent in connection with "constructing or demolishing buildings or doing any excavating in connection therewith.” In pointing to this underlying policy inherent in the legislative product, we reiterate what we have expressed previously — that we construe the statute in a judicial role and do not function as *301 legislators (see Matter of Rapp v New York City Employees’ Retirement System, 42 NY2d 1, 6).
 Moreover, the statute now serves the salutary purpose of inducing owners and contractors to assure that only financially responsible and safety-conscious subcontractors are engaged so that a high standard of care might be maintained throughout the entire construction site. While the duty imposed by section 241 may not be delegated, the burden may be shifted to the party actually responsible for the accident, either by way of a claim for apportionment of damages under the rule of Dole v Dow Chem. Co. (30 NY2d 143) or by contractual language requiring indemnification by the injured worker’s employer (see Kelly v Diesel Constr. Div. of Carl A. Morse, Inc., 35 NY2d 1, 5-7). The hiring of responsible subcontractors will be encouraged, for any solace based upon a right of indemnification or contribution will be short lived if it proves that the subcontractor is financially irresponsible. Further, as liability in normal course will be cast ultimately upon the party actually responsible for the accident, insurance premiums will be adversely affected, thereby furnishing an additional incentive to both insurer and insured to maintain safety standards necessary to avoid increased exposure to liability.
Accordingly, in the Allen action the order of the Appellate Division should be affirmed, with costs, and the question certified answered in the negative; and in the Myers action, the judgments of the Supreme Court should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
In Allen v Cloutier Constr. Corp.: Order affirmed, etc.
In Myers v Cornell Univ.: Judgments affirmed.