In the Matter of JACOB JESSELLI, Respondent, v NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Appellant.

First Department, March 14, 1985

### APPEARANCES OF COUNSEL

*Marvin R. Kwartler* of counsel (*Fay Leoussis* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Irving H. Glasgow* of counsel (*Beverly Gross,* attorney), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

In this CPLR article 78 proceeding the New York City Employees' Retirement System appeals from a judgment (119 Misc 2d 1064) which annulled its determination denying petitioner military veteran's retirement benefits because of his convictions in State and Federal courts on various fraud and conspiracy charges unrelated to his employment with the city's Department of Transportation. Although we do not believe that his entitlement to benefits is as broad as Special Term found, we agree that petitioner, who served in the military during the Korean War, is eligible for veteran's retirement benefits under the Administrative Code of the City of New York.

Petitioner, born on January 6, 1931, served in the United States Army for 105 days, during the time of the Korean conflict, and was "discharged under honorable conditions" on March 10, 1952. He entered city service on September 25, 1952 with the Department of Transportation as a laborer, and later became a motor vehicle operator. His employment continued for 29 years, until he was suspended on December 7, 1981, pending the resolution of departmental charges, filed on August 6, 1981, based on his Federal and State criminal fraud and conspiracy convictions for his complicity in a scheme involving stolen credit cards which were used to purchase airline tickets for resale at discount. On December 9, 1981, immediately after his suspension, petitioner filed an application for retirement pursuant to Administrative Code § B3-36.0, to be effective January 8, 1982, 30 days later, the earliest date permitted by statute.

On December 17, 1981 a hearing was held upon the departmental charges, and, in a report filed December 31, the administrative law judge recommended petitioner's dismissal. The recommendation was accepted and petitioner was dismissed effective January 5, 1982, three days prior to his planned retirement date. On January 7, petitioner was notified that his retirement application would be filed "without action" in light of his dismissal. Petitioner appealed this determination to the Civil Service Commission, which declined to disturb it, but he took no further challenge.

On August 16, 1982 petitioner filed a new application for retirement, based upon Administrative Code § B3-36.0 (2), which provides special preferential retirement credits to qualifying military veterans who served "during the time of war". On September 2 the Retirement System found petitioner ineligible for such benefits because his period of service was not during a qualifying "time of war", and on the further ground that his dismissal prior to the application precluded any award of retirement benefits.

Petitioner then instituted this proceeding, challenging the denial of his application for military veteran's retirement benefits. In its answer the Retirement System raised a third ground for denial, arguing that petitioner's "discharge under honorable conditions" was not equivalent to an honorable discharge, which is the only type of discharge entitling a member of the System to claim the beneficial provisions of Administrative Code § B3-36.0 (2).

Special Term held that petitioner was entitled to military veteran's retirement benefits, reasoning that the Korean con-

flict was a war, regardless of its appellation, because "[w]ar is an existing fact and not a legislative decree" (119 Misc 2d 1064, 1066, *supra*). Citing *Youngstown Co. v Sawyer* (343 US 579) it noted, "A state of war may in fact exist without a formal declaration" (*supra,* p 1066). It also rejected the Retirement System's arguments regarding the nature of petitioner's discharge and the preclusive effect of his dismissal before his retirement date. This appeal followed.

In addressing the issues raised by the Retirement System, we take note of the Court of Appeals recent decision in *Matter of Cassiliano v Steisel* (64 NY2d 674) in which it refused to overrule *Matter of Rapp v New York City Employees' Retirement Sys.* (42 NY2d 1). In *Rapp* the court held that an applicant was entitled to retirement benefits under section B3-36.0 (2), despite his termination from employment on the ground of misconduct one day before his retirement application was to be effective. The court noted that Administrative Code § B3-36.0 (2) does not condition eligibility for a military veteran's retirement pension upon the applicant's being an employee in city service at the time he applies for benefits, and thus renders his previous dismissal for misconduct irrelevant. On this appeal the Retirement System conceded that the determination in *Cassiliano,* which was then pending in the Court of Appeals, would be dispositive of whether petitioner had been foreclosed from military veteran's retirement benefits by his prior dismissal for misconduct. That issue is no longer open to dispute.

We conclude also that, if, as Special Term found, service in the Armed Forces during the Korean conflict constitutes service "during the time of war", petitioner's eligibility for military veteran's retirement benefits is governed, not by section B3-36.0 (2), as it held, but by B3-36.0 (3). Both code provisions permit a military veteran to take retirement credit for time spent in military service prior to the commencement of his city service. The most notable distinction between the two types of retirement is the time at which payment of the pension begins. Subdivision (2), enacted in 1947 (L 1947, ch 664, amended by L 1960, ch 509), and applicable only to those "honorably discharged member[s]" with 25 years of service who have reached the age of 50, provides for the immediate payment upon retirement of the pension that the member would have received had he remained in service until he attained the age at which he otherwise would have become eligible for retirement. As a condition to such entitlement, however, the member must make a lump-sum payment into the retirement fund equal to what he would be required to pay had he reached the statutory minimum

retirement age. Subdivision (3), enacted some two years later (L 1949, ch 717, amended by L 1960, ch 509), and applicable to those members of a like age and years of service who, as in the case of petitioner, were "separated or discharged under honorable conditions", eliminates the lump-sum payment but defers payment of the pension until the selected retirement age is reached. In petitioner's case the minimum retirement age for his job classification, which he selected, is 58 years.

Special Term found that petitioner's discharge, although less than an honorable one, was not punitive, and, citing *Crawford v Davis* (249 F Supp 943, *cert denied* 383 US 921), held that it could not deprive him of any property rights. The court also noted that the validity of the Retirement System's objection based on the nature of petitioner's discharge was questionable since it had never been asserted in the rejection of benefits letter and was first raised in the answer to the petition. Petitioner, however, does not adopt this argument on appeal, and it appears that he misrepresented the nature of his discharge in his August 16, 1982 retirement application. Thus, the Retirement System may assert the objection even though it was never invoked at the administrative level. (*Cf. Matter of Blum v D'Angelo,* 15 AD2d 909.)

In any event, Administrative Code § B3-36.0 clearly distinguishes between two classes of veterans, and provides greater rights for one than the other. The plain language of subdivision (2) excludes petitioner since he was not honorably discharged. Petitioner's argument that his discharge is equivalent to an honorable discharge, since under Federal law a "discharge under honorable conditions" does not deprive a veteran of any Federal property rights, ignores the point that it is the city, not the Federal Government, which prescribes the eligibility of veterans for various benefits, and that the city is free to treat honorably discharged veterans differently from those with discharges of a lesser grade. That it has chosen to treat them differently is clear from the language of subdivision (2) whose benefits are limited to "an honorably discharged" member, as compared to subdivision (3) which specifically refers to those "separated or discharged under honorable conditions". We note, in passing, that the petition specifically challenged the Retirement System's rejection of petitioner's claim to benefits under subdivision (2) and never specifically sought relief under subdivision (3). If petitioner is otherwise eligible, however, we are empowered, as the System concedes, to direct it to award him benefits under subdivision (3).

The more difficult issue, and the dispositive one insofar as petitioner's entitlement to any military retirement benefits is concerned, is whether veterans of the Korean conflict qualify as having served in the Armed Forces of the United States "during the time of war." The Retirement System submitted affidavits from its executive director, who had been associated with it since 1958, and from the deputy director of operations, associated with it since 1949, both of whom attested to the System's consistent policy of interpreting the Administrative Code § B3-36.0 phrase "the time of war" as being applicable solely to military service in World War I or World War II. Special Term, as noted previously, found nonetheless that the Korean conflict was, in fact, a war and that the pertinent code provision encompassed all wars. We agree.

Unable to refer to any section of the statute which specifically defines "time of war" in a manner supportive of its argument, the Retirement System instead relies on its own practice of treating the conflict as a nonwar. While the opinions of an agency charged with the administration of a statute may provide guidance on questions of statutory interpretation, they are not conclusive. If the interpretation of a statute evolves from knowledge peculiar to an agency's expertise and experience the courts generally defer to the agency, provided that its interpretation is not irrational or unreasonable. (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459.) "Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*supra,* p 459). The Retirement System does not point to any body of experience in the administration of the statute or factual basis, other than its ipse dixit, which would provide a rationale for its interpretation of the statute. In such circumstances its interpretation is not entitled to any special deference and it is the court's responsibility to interpret the statute. Nor does the failure of the city council over the years to amend the statute in the face of the Retirement System's interpretation lead ineluctably to a conclusion that it has acquiesced in that interpretation.

This case ultimately turns on a determination of legislative intent. Certainly, a legislature has the power, as noted by the dissent, to define the term "time of war", or, for that matter, any term which it uses. In this case it has not. When a legislative body does not define a term, and a court is called upon to ascertain its meaning, it may rely on a basic principle of construction — "[A] statute is to be construed according to the

ordinary meaning of its words." (*Sega v State of New York,* 60 NY2d 183, 190-191; *People v Cruz,* 48 NY2d 419, 428.)

The Retirement System relies on the history of Civil Service Law § 85, which also extends benefits for military service "in time of war" and has been amended on different occasions to include the Korean and Vietnam conflicts, as evidence that "time of war" can only mean both World Wars. When the predecessor to section 85 was drafted, however, it specifically defined "time of war" to include World War I and World War II. Thus, without the amendments, other veterans would clearly be excluded from its benefits. On the other hand, neither subdivision (2) nor (3) of Administrative Code § B3-36.0, both of which were enacted before the Korean War ever began, specifically defines "time of war". Thus, amendment was unnecessary.

Since no New York case ever appears to have construed the expression "time of war", a review of case law in other jurisdictions is helpful.* In *Western Reserve Life Ins. Co. v Meadows* (152 Tex 559, 261 SW2d 554) the Supreme Court of Texas, in determining the right, if any, of a surviving spouse to the proceeds of a life insurance policy, addressed itself to whether the insured's death in a plane crash on August 23, 1951 occurred during a "time of war", and found that it did. In giving the words of the contract "their plain, ordinary and generally accepted meaning" (*supra,* at p 569), the court found that war, as it is commonly defined, was being waged in Korea at the time of the insured's death. It took note of the large number of casualties, the active involvement in Korea of all branches of the armed services for over a year, and the shifting battlefronts throughout the Korean peninsula (*supra,* at pp 566-568). The court also cited a concurring opinion of *Beley v Pennsylvania Mut. Life Ins. Co.* (373 Pa 231, 240, 95 AD2d 202, 213) which stated, "In discussing the principles of law involved in this case, we must assert at once that to deny that the Korean military action is war in its popularly accepted meaning is to deny the evidence of one's senses."

What constitutes war was also discussed in *New York Life Ins. Co. v Bennion* (158 F2d 260, 264). "When one sovereign nation attacks another with premeditated and deliberate intent to wage war against it, and that nation resists the attacks with all the force at its command, we have war in the grim sense of reality. It is war in the only sense that men know and understand it. Mankind goes no further in his definitive search — he

---

* In *Matter of Bateman v Marsh* (296 NY 849) the court refused to construe the term "time of war" in the NY Constitution, article V, § 6 as being limited to World War II veterans to satisfy equal protection requirements.

does not stand on ceremony or wait for technical niceties. To say that courts must shut their eyes to realities and wait for formalities, is to cut off the power to reason with concrete facts. We cannot believe that the courts are deprived of the power to deal with this vital question in a practical and realistic sense." These cases clearly articulate what would be the generally accepted view of the conflict in Korea, viz., Americans were at war there.

Enacted in the aftermath of World War II, no doubt as an expression of society's gratitude for their sacrifice, Administrative Code § B3-36.0 (2) and (3) were obviously intended to provide special benefits to those who served our Nation in time of war. The drafters did not, however, limit the statute's benefits to the veterans of the World Wars, as they could easily have done. Instead, they employed the term "time of war", which, on its face, is clear and unambiguous, and covers veterans of all wars, past and future. In his message to the Governor at the time of the enactment of section B3-36.0 (2) the Mayor of the City of New York, in pertinent part, stated, " 'The object of the bill is to add a new subdivision to Section B3-36.0 of the Administrative Code of the City of New York, to be Subdivision 2, which would provide that any member of the New York City Employees' Retirement System, who is a war veteran, may retire' ". (1947 NY Legis Ann, at 37, 38.) Again, there was not the slightest suggestion in this message that the statute's application was limited to any particular war. Nor does the statute contain language limiting its application to declared, as opposed to undeclared, wars.

Without a specific reservation of benefits to a class more narrow than those who served in "time of war", an interpretation which excludes those who served in the Armed Forces during the Korean conflict from the benefits of Administrative Code § B3-36.0 (2) and (3) is unreasonable and arbitrary.

Accordingly, the judgment, Supreme Court, New York County (Israel Rubin, J.), entered December 8, 1983, should be modified, on the law, without costs or disbursements, and the Retirement System directed to grant petitioner retirement benefits pursuant to Administrative Code § B3-36.0 (3), and otherwise affirmed.

Ross, J. (dissenting). I would reverse Special Term and reinstate the determination of respondent New York City Employees' Retirement System (NYCERS), which denied a military veteran's pension to Jacob Jesselli (petitioner), under the Administrative Code of the City of New York § B3-36.0 (2).

Petitioner, an approximately 29-year veteran of the New York City civil service, was suspended by the New York City Department of Transportation (Department) on December 7, 1981, from his position as a motor vehicle operator with that Department, when they filed departmental charges against him. These charges related to the fact that petitioner had been convicted of violations of various New York State criminal laws, as well as violations of various Federal criminal laws; and, that while his State convictions in the District Court of Nassau County and in the New York City Criminal Court located in Queens County, resulted in probation, his Federal conviction resulted in two years' imprisonment, which he has served. In substance, the petitioner was convicted in both State and Federal courts of having conspired with 16 other individuals to use forged, lost, or stolen airline credit cards to purchase airline tickets which were then sold to customers at a discount from the face value of the ticket. The period covered by the petitioner's criminal activities extended from about 1975 to about 1979.

Following petitioner's suspension, a departmental hearing was held concerning the charges on December 17, 1981. At this hearing, the petitioner was represented by counsel, who cross-examined witnesses, and the petitioner testified in his own behalf. After all of the evidence was in, the administrative law judge who presided, filed her report and recommendation. In pertinent part, she found that the petitioner's participation in the subject criminal activities "unequivocally demonstrate[d] [his] willingness to engage in fraud and deceit for personal gain", and she recommended that the petitioner be dismissed from the Department. This recommendation was accepted by the Department and the petitioner was, in fact, dismissed, effective January 5, 1982.

More than seven months after his dismissal from city service, on August 16, 1982, petitioner filed an application for retirement, under Administrative Code § B3-36.0 (2), which provides for retirement benefits to certain qualified military veterans, who served during time of war. In pertinent part, the subject section reads as follows: "2. Notwithstanding any other provisions * * * of any other section of the code to the contrary, a member who is an honorably discharged member of any branch of the armed forces of the United States, having served as such during the time of war and who has attained the age of fifty years, may retire upon his own request upon written application to the board setting forth at what time not less than thirty days subsequent to the execution and filing thereof his desires to be

retired, provided that such member at the time so specified for his retirement shall have completed at least twenty-five years of allowable service."

An analysis of Administrative Code § B3-36.0 (2) indicates that for a person to be eligible for benefits under this section they must: (1) be a member of the city retirement system; (2) be honorably discharged from the Armed Forces of the United States; (3) have served in such Armed Forces from which they received their honorable discharge during the time of war; (4) have at least attained the age of 50 years; and, (5) have completed at least 25 years of allowable service with New York City.

A majority of the Court of Appeals of this State, in the case of *Matter of Rapp v New York City Employees' Retirement System* (42 NY2d 1) has held that, under the section of the Administrative Code cited *supra,* a member of the retirement system, who has been honorably discharged from the armed services and who has served as such in time of war and who has attained the age of 50 years or more and has completed 25 years of allowable service is entitled to a pension, even though that retirement system member is a person who has previously been discharged from city service due to misconduct. Incidentally, this majority holding in *Rapp,* has recently been reaffirmed by a unanimous Court of Appeals, in the case of *Matter of Cassiliano v Steisel* (64 NY2d 674).

The petitioner in his retirement application, brought under the section cited *supra,* states, in pertinent part, that he is a member of the retirement system, that he allegedly received an honorable discharge from the Armed Forces of the United States, that he served approximately 105 days in those Armed Forces during the Korean conflict, that he has attained the age of 50 years, and that he has completed at least 25 years of allowable service. In evaluating his application, the respondent, NYCERS, rejected him upon the grounds, *inter alia,* that the petitioner's military service during the Korean conflict was not service during "time of war".

Thereafter, petitioner instituted a CPLR article 78 proceeding to challenge respondent NYCERS' denial of his application for a military veteran's retirement, under Administrative Code § B3-36.0 (2).

In its answer, NYCERS, *inter alia,* asserted that, in addition to the facts that petitioner's service in the Korean conflict was not in time of war, and that petitioner would, in any event, not have been eligible for the benefits under the subject section, since, contrary to the allegation in the petition, the petitioner

did not receive an honorable discharge from the United States Armed Forces. The type of discharge received by the petitioner, as evidenced by a copy of that discharge which appears in the record on appeal, is entitled "a general discharge under honorable conditions".

A general discharge, under honorable conditions, while not a punitive military discharge, has been characterized as something "less than an honorable discharge" (*Unglesby v Zimny,* 250 F Supp 714, 716 [US Dist Ct, ND Cal, S Dist]; *see also in this connection, Crawford v Davis,* 249 F Supp 943, 946, *cert denied* 383 US 921). The fact that an honorable discharge is not the same thing as a general discharge, under honorable conditions, is illustrated by Administrative Code § B3-36.0 (3), which subdivision provides less retirement benefits to a qualifying veteran, who served with the Armed Forces during time of war and received a general discharge, under honorable conditions.

Special Term (119 Misc 2d 1064) granted the petition on the basis that the respondent NYCERS acted arbitrarily, capriciously and unreasonably, in finding that the Korean conflict was anything but "time of war"; and, therefore, petitioner was entitled to a veteran's preference pension for service in time of war, pursuant to section B3-36.0 (2).

I disagree. In my view Special Term has abused its discretion and usurped the Legislature's function.

It is undisputed that for almost four decades, NYCERS, has consistently interpreted the words "time of war" found in Administrative Code § B3-36.0 (2) and (3), to only mean World Wars I and II, which were formally declared wars. I consider it significant that the Legislature has seen fit to leave undisturbed the respondent's definition of time of war, in respect to these two sections of the Administrative Code.

The legal authority cited by Special Term in support of its position that the words "time of war", include the Korean conflict are all inapplicable since none of those cases deal with the section of the Administrative Code discussed *supra.*

Although only the United States Congress has the power to declare war (US Const, art I, § 8 [11]), legal authority in this State supports the conclusion that the Legislature has the power to define the term "time of war" (*Matter of Cahan v McNamara,* 192 Misc 453, *affd* 298 NY 713).

Although one would be hard pressed to deny that the Korean conflict was actually a war, since many American lives were lost, the authority to declare this conflict as a "time of war" is not vested in the courts.

Accordingly, since the petitioner did not serve in "time of war" and is not an honorably discharged veteran, I would reverse the order and judgment (one paper), Supreme Court, New York County (Israel Rubin, J.), entered December 8, 1983, in this article 78 proceeding, reinstating and confirming the determination of respondent NYCERS, which denied petitioner's application for military veteran's benefits, pursuant to Administrative Code § B3-36.0 (2), and dismiss the petition.

MURPHY, P. J., and KUPFERMAN, J., concur with SULLIVAN, J.; SANDLER and ROSS, JJ., dissent in an opinion by ROSS, J.

Judgment, Supreme Court, New York County, entered on December 8, 1983, modified, on the law, without costs and without disbursements, and the Retirement System directed to grant petitioner retirement benefits pursuant to Administrative Code § B3-36.0 (3), and otherwise affirmed.